**ALLIED ERECTING & DISMANTLING COMPANY, INC., Appellant,**

v.

**UNECO REALTY COMPANY et al., Appellees.**

[Cite as *Allied Erecting & Dismantling Co. v. Uneco Realty Co.* (2001), 146 Ohio App.3d 136.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

Nos. 98–CA–77 and 99–CA–150.

Decided Sept. 26, 2001.

*Eckert Seamans Cherin & Mellott, LLC, Christopher R. Opalinski* and *William B. Pentecost, Jr.; Nadler Nadler & Burdman Co., L.P.A.,* and *Jay K. Skolnick,* for appellant.

*Michael R. Stith,* for appellees Ruhlin Company and St. Paul Mercury Insurance Company.

---

GENE DONOFRIO, Judge.

Plaintiff-appellant, Allied Erecting and Dismantling Company, Inc. ("Allied"), appeals from two decisions of the Mahoning County Court of Common Pleas, one granting a directed verdict in favor of defendant-appellee, Ruhlin Company

("Ruhlin"), and another adopting the magistrate's decision that overruled Allied's motions to mold the verdict and to correct the judgment.

The parties in this case were previously before this court in the case of *Allied Erecting & Dismantling Co. v. Uneco Realty Co.* (1996), 116 Ohio App.3d 410, 688 N.E.2d 526, on an appeal by defendants-appellees, United Excavating Company and Uneco Realty Company ("United/Uneco"), regarding the dismissal of their counterclaim against Allied and Ruhlin. A restatement of the facts as set out in that case is applicable in this case.

The Ohio Department of Transportation ("ODOT") awarded Ruhlin the primary contract for the South Avenue bridge project. Per ODOT contract requirements, Ruhlin obtained a $6,500,000 surety bond from defendant-appellee, St. Paul Mercury Insurance Company ("St. Paul"). Ruhlin subsequently entered into independent subcontracts with Uneco and United. Though Uneco and United are separate companies, Ted Soroka is president of both, and both are represented by the same counsel in this matter. Uneco contracted to supply dirt for the bridge project, while United contracted for certain demolition and dirt compaction. On March 5, 1991, United/Uneco entered into an exclusive supply contract with Allied for the purchase of approximately 76,000 cubic yards of dirt at $1.25 per cubic yard. The Allied–United/Uneco contract provided that Allied would load the dirt from its site on Poland Avenue in Youngstown, Ohio, onto trucks furnished by United/Uneco for transport to the South Avenue bridge project site.

After the delivery of approximately 11,000 cubic yards of dirt, an authorized random sampling of Allied's supply site revealed that the dirt contained trace amounts of asbestos and did not meet the specifications required by the ODOT contract. A stream of letters was exchanged between Allied and United/Uneco addressing additional expenses Allied alleged that it incurred due to United/Uneco's delay in removing the dirt, the necessity for Allied to be compensated for these expenses, and other related terms of their contract. On October 29, 1991, Allied notified United/Uneco that due to the additional site work performed by it at the request of United/Uneco and the resulting delay of the removal sequence, the unit price of the dirt would be increased to $3.25 per cubic yard, effective December 31, 1991.

In a letter dated December 1, 1991, United/Uneco acknowledged Allied's October 29, 1991 letter, stating that it was aware of the delay-related expenses and that it "anticipate[d] that ODOT and the general contractor [Ruhlin would] undoubtedly grant a percentage raise relative to our contract." This letter also noted that due to the delays, United/Uneco would now have to use approximately 22,500 cubic yards of sand and gravel, instead of dirt, for the project. Since Allied did not have a source of supply for sand and gravel, this amount was to be

obtained from another source and would correspondingly decrease the amount of dirt United/Uneco would need to purchase from Allied.

In subsequent correspondence, United/Uneco advised Allied that it was not in a position to request additional compensation from ODOT, since it did not have a contract with ODOT, but that it would pursue the matter through Ruhlin.

On June 12, 1992, at the request of United/Uneco, Allied provided Ruhlin with a letter of assurance, stating that as a gesture of good faith, it would continue to provide the dirt as contracted, while reserving the right to seek additional compensation for the additional work performed to meet the ODOT asbestos-content requirements at an appropriate time. Allied also notified United/Uneco that since it was not privy to the contracts between Ruhlin and United/Uneco and did not fully understand the necessity of this letter or the status of those contracts, it had invited Ruhlin to respond if Ruhlin had any further questions or wished to discuss the matter in further detail.

On June 18, 1992, United/Uneco wrote a letter to Allied demanding that it clarify to Ruhlin its reservation for further compensation, insisting that Allied assure Ruhlin that any reservation Allied maintained was against United/Uneco, and not against Ruhlin, since no contract existed between Allied and Ruhlin.

Ruhlin terminated its contracts with United/Uneco in May 1992, asserting as the primary reasons United/Uneco's failure to satisfactorily assure Ruhlin of their ability to supply dirt as contractually required, and their refusal to obtain an additional surety bond. Ruhlin informed United/Uneco that its decision was based on information of United/Uneco's unstable financial position and alleged labor difficulties.

In September 1992, Allied filed its complaint against United/Uneco, Ruhlin, and St. Paul. United/Uneco filed claims against Allied, Ruhlin, and St. Paul. The case went to trial and the trial court granted Ruhlin's motion for a directed verdict as to all of Allied's claims against Ruhlin. It also granted United/Uneco's motion for a directed verdict against Allied as to the issues of unpaid damages in the amount of $3,204 and extra work in the amount of $153,116. After the trial court granted Ruhlin a directed verdict as to Allied's claims, United/Uneco settled its claim with Ruhlin. The trial proceeded on Allied's remaining claims against United/Uneco on the issues of lost profits of $28,583 and disposal costs of $320,263 and on United/Uneco's claims against Allied for breach of contract and lost profits. The jury found in Allied's favor and awarded it $69,575. The trial court entered judgment on March 5, 1998.

Allied filed a motion to mold the verdict for prejudgment interest on its award. It also filed a motion to correct the judgment regarding an alleged stipulation that Ruhlin/St. Paul would pay either Allied or United/Uneco a $3,204 contract

balance depending on who the jury determined was owed the money. Before the trial court ruled on Allied's motions, Allied filed its first notice of appeal (case No. 98–CA–77). Given the pending appeal, the trial court ruled that Allied's motion to mold the verdict was moot. Upon Allied's request, this court granted a limited remand to the trial court to rule on the motion to mold the verdict and the motion to correct the judgment.

The magistrate heard arguments on the motions, which he overruled. Allied filed objections to the magistrate's decision. The trial court subsequently overruled the objections and adopted the magistrate's decision as its own. Following this decision, Allied filed its second notice of appeal (case No. 99–CA–150). Subsequently, this court combined Allied's two appeals.

United/Uneco also filed a notice of cross-appeal from the trial court's March 5, 1998 judgment entry. However, all collection proceedings against United/Uneco have been automatically stayed due to the fact that they have filed for Chapter 7 bankruptcy. Therefore, this·appeal deals only with the issues between Allied, Ruhlin, and St. Paul.

Allied raises a total of six assignments of error, four in its first appeal and two in its second appeal. Allied's first assignment of error states:

"The court erred in directing a verdict against Allied (in favor of Ruhlin and United) on its extra–work claim when Ruhlin and United directed Allied to perform this work and Allied advised them of its expectation of compensation."

At the close of Allied's case-in-chief, Ruhlin moved for a directed verdict with regard to Allied's claim that Ruhlin owed it for the extra work it performed for the asbestos testing. The trial court granted Ruhlin's motion on two different bases. It stated that ODOT, not Ruhlin, had directed Allied's extra work and that no contract existed between Allied and Ruhlin.

Allied argues that it presented clear evidence that Ruhlin, not ODOT, directed Allied to perform the extra work. It asserts that the testimony of its president, John Ramun, provided the necessary evidence. Ramun testified that it was Greg Monsanty, Ruhlin's project manager, who initially directed Allied to strip off the top layer of dirt at Allied's site prior to further testing so as to avoid any surface contamination. Ramun further testified that Monsanty directed Allied to strip and test other areas on the dirt site. He testified that as a result of these orders, Allied had to move slag, stone piles, and other debris before it could even begin the testing. Throughout this process, Ramun testified, Allied advised Monsanty that it was due extra compensation for its extra work, to which he agreed.

Allied also argues that in granting the directed verdict the trial court failed to consider Allied's claim of unjust enrichment. Allied asserts that since its original contract did not require it to perform the extra work, by doing so Allied

conferred a substantial benefit on Ruhlin and United/Uneco for which it was not compensated.

Civ.R. 50(A)(4) deals with motions for directed verdicts. It provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

A ruling on a motion for a directed verdict is a question of law rather than a question of fact, as it tests the legal sufficiency of evidence rather that its weight and credibility. *Keeton v. Telemedia Co. of S. Ohio* (1994), 98 Ohio App.3d 405, 409, 648 N.E.2d 856. Thus, appellate review of a ruling on a motion for directed verdict is *de novo*. *Id.*

To prove a breach of contract claim, a plaintiff must show (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage or loss to the plaintiff. *Doner v. Snapp* (1994), 98 Ohio App.3d 597, 600, 649 N.E.2d 42. To prove the existence of a contract, the plaintiff must show that both parties consented to the terms of the contract, that there was a meeting of the minds of both parties, and that the contract terms are definite and certain. *McSweeney v. Jackson* (1996), 117 Ohio App.3d 623, 631, 691 N.E.2d 303.

It is undisputed that no written contract existed between Allied and Ruhlin for the extra work. Therefore, if a contract existed between these parties it had to be an oral contract. Construing the evidence most strongly in favor of Allied, the evidence does not indicate that an oral contract existed between Allied and Ruhlin.

In order to prove an enforceable contract, there must be a meeting of the minds of the parties to the contract. *Noroski v. Fallet* (1982), 2 Ohio St.3d 77, 79, 2 OBR 632, 442 N.E.2d 1302. Additionally, a valid contract must be specific as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term. *Alligood v. Procter & Gamble Co.* (1991), 72 Ohio App.3d 309, 311, 594 N.E.2d 668.

Sufficient evidence does not exist to establish a "meeting of the minds." Ramun stated during his testimony that he informed Monsanty that he expected to be paid for his extra work. He testified that Monsanty agreed that Allied would be due extra compensation for its extra work. Ramun testified that Monsanty said that the extra work was not in his contract with ODOT and that

he would look to be reimbursed by ODOT. However, Allied failed to demonstrate two of the essential components of a valid contract. The identity of the parties to be bound was not ascertainable. The testimony was unclear as to who, if anyone, was to pay Allied. Ramun himself never explicitly testified that Ruhlin promised that it would pay Allied. He testified only that Ruhlin, through Monsanty, agreed that Allied was due extra compensation for the extra work. Furthermore, no testimony was presented as to an agreed price term for the extra work or as to an agreed method to determine the price of the services.

██ In regard to Allied's unjust enrichment claim, Ruhlin/St. Paul argues that Allied failed to present this claim at trial and therefore it should not be considered. However, Allied did raise this claim at trial. In its argument against Ruhlin/St. Paul's motion for directed verdict, Allied asserted that it proved that it was entitled to relief under either an oral contract or *quantum meruit*. A party may recover in *quantum meruit* where unjust enrichment would result if the recipient of the benefit retained the benefit without paying for it. *Sonkin & Melena Co., L.P.A. v. Zaransky* (1992), 83 Ohio App.3d 169, 175, 614 N.E.2d 807. A claim for unjust enrichment exists when the plaintiff demonstrates (1) a benefit to the defendant conferred by the plaintiff, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 465 N.E.2d 1298.

██ Allied presented evidence on the issue of unjust enrichment. As to the first element, Ramun testified that Monsanty agreed that the extra work was outside everyone's responsibility. Since ODOT was requiring Ruhlin to perform the testing before proceeding with the project, it was to Ruhlin's benefit that Allied performed the extra work. Had Allied not performed the extra work, Ruhlin would have been forced to complete the work itself or pay someone else to do so, otherwise Ruhlin's contract with ODOT might have been jeopardized.

As to the second and third elements, it is apparent that Ruhlin knew of the benefit Allied conferred upon it by performing the stripping and soil testing. Furthermore, the benefit was retained because Ruhlin relied upon Allied's work and provided no additional compensation to Allied all the while knowing that Allied expected to be paid for this work. Allied produced enough evidence that its unjust enrichment claim should have been presented to the jury, especially given the fact that it was Ruhlin who terminated the contract for the supply of dirt.

When construing the evidence most strongly in favor of Allied, a definite possibility exists that the jury, if presented with the issue, may have found that Allied was entitled to recovery in quasi-contract.

Accordingly, Allied's first assignment of error has merit.

Allied's second assignment of error states:

"The court erred in directing a verdict against Allied (in favor of Ruhlin) as to its lost profits and disposal claims because the assignment provision in the supply contract gives Allied the right to seek direct payment from Ruhlin."

In addition to Allied's claim for extra work, it sought to recover its lost profits and disposal costs from Ruhlin pursuant to the assignment provision in the supply contract between Allied and United/Uneco. The court granted Ruhlin/St. Paul's motion for a directed verdict as to these claims as well. Section five of the supply contract provides:

"If United [/Uneco] defaults under the payment terms of this contract, United [/Uneco] assigns to Allied its right to collect from Ruhlin Company and grants to Ruhlin Company the right to pay Allied direct for materials sold."

Allied argues that section five of the supply contract gave it the right to recover from Ruhlin if United/Uneco defaulted. It states that the evidence demonstrated that United/Uneco did in fact default, as is confirmed by the jury's verdict against them. Accordingly, Allied argues, United/Uneco's default triggered its right to recover directly from Ruhlin.

An assignee stands in the shoes of the assignor with respect to the assignor's rights and remedies against the obligor. *Inter Ins. Exchange of the Chicago Motor Club v. Wagstaff* (1945), 144 Ohio St. 457, 460, 30 O.O. 44, 59 N.E.2d 373. The assignment provision assigned to Allied the right to collect from Ruhlin for "materials sold" if United/Uneco defaulted. Since United/Uneco settled its claim with Ruhlin, Allied should have the right to enforce United/Uneco's settlement against Ruhlin to collect for materials sold. The assignment provision does not give Allied the right to collect from Ruhlin for additional damages suffered by Allied due to United/Uneco's breach. Ruhlin was not obligated to guarantee that United/Uneco would not breach the sales contract with Allied. Accordingly, the trial court properly granted a directed verdict for Ruhlin on Allied's lost profits and disposal claims.

Hence, Allied's second assignment of error is without merit.

Allied's third assignment of error states:

"The trial court improperly refused to advise the jury, or allow cross-examination, regarding the Ruhlin–United settlement agreement."

After United/Uneco settled their claims with Ruhlin, the trial court refused to instruct the jury as to the settlement or to allow cross-examination regarding the settlement. Allied argues that the trial court erred in not advising the jury about Ruhlin's settlement with United/Uneco or permitting Allied to bring the settlement up during cross-examination of United/Uneco's witnesses. At trial, Allied proffered the reasons for its objection to the court's ruling. Allied argued that it should have been permitted to offer evidence with regard to the settlement because the settlement evidence would establish bias on the part of United/Uneco's witnesses. Allied also maintained that the jury should have been informed about the settlement so as not to cause undue confusion and speculation among the jurors as to why Ruhlin was no longer involved in the trial.

As Allied points out in its reply brief, this assignment of error deals with issues that concern United/Uneco. Since this appeal is proceeding only against Ruhlin and St. Paul and not against United/Uneco at this time, Allied's third assignment of error is moot.

Allied's fourth assignment of error states:

"The trial court erred in not allowing Allied to introduce evidence of its actual disposal costs."

The trial court did not permit Allied to admit a summary chart of its disposal costs. The reason the court did not admit the summary chart was because the disposal costs in the summary chart were not the same amounts as the costs Allied was claiming as its damages. Allied did present testimony and exhibits regarding the actual amount of damages it was claiming as a result of its disposal costs through Joseph Tahos. Allied argues that the court should have admitted the summary of its disposal costs.

Again, as Allied states in its reply brief, this assignment of error also pertains only to Allied's claim against United/Uneco and, therefore, it need not be addressed at this time.

Allied's first assignment of error in its second appeal states:

"The court erred in denying Allied's motion to mold verdict to include an award for prejudgment interest when Allied has not been made whole for the period of time between the accrual of the claim and the entry of judgment."

The magistrate held a hearing on Allied's motions. He found that there was nothing inherent in the jury's findings upon which he must conclude that full compensation was not reflected by the amount of the verdict. He also found that Allied did not demonstrate the right to have the judgment amended to provide for the additional $3,204 award against Ruhlin. The magistrate accordingly overruled both motions. The trial court subsequently adopted the magistrate's decision.

Again, it is unnecessary to address this alleged error because this issue pertains only to United/Uneco, since the judgment was entered against them.

Allied's second assignment of error in its second appeal states:

"The court erred in denying Allied's motion to correct judgment to increase the verdict in favor of Allied by $3,204.00 when Ruhlin/St. Paul stipulated on the record that Allied was entitled to that amount."

During an in-chamber conference between all parties, Ruhlin/St. Paul stated that they would pay the $3,204 to the court because they were not sure to whom this sum was owed, Allied or United/Uneco. During a subsequent in-chamber meeting between Allied and United/Uneco to discuss jury instructions, the parties and the court were not clear as to whether United/Uneco or Ruhlin/St. Paul owed Allied the $3,204.

In their reply to Allied's motion to correct the judgment, Ruhlin/St. Paul stated that they had forgotten that they had already paid the $3,204 contract balance and their agreement to pay that balance had been on an assumption by all parties that the balance had not been paid. Allied argues that given these facts, the trial court erred in denying its motion to correct the judgment. Allied claims that based on Civ.R. 60(A), the trial court should have corrected the judgment to reflect Ruhlin/St. Paul's alleged stipulation to pay the $3,204. It claims that it relied on this stipulation by not submitting this issue to the jury.

The standard of review of a trial court's denial of a Civ.R. 60 motion is abuse of discretion. *Moore v. Emmanuel Family Training Ctr.* (1985), 18 Ohio St.3d 64, 66, 18 OBR 96, 479 N.E.2d 879. Abuse of discretion connotes more than an error in judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

Civ.R. 60(A) provides the trial court with the authority to correct "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission" upon the motion of any party. Civ.R. 60(A). It is within the trial court's discretion to correct clerical mistakes that are apparent on the record, but not those mistakes that require the court to make substantive changes in judgments. *State ex rel. Litty v. Leskovyansky* (1996), 77 Ohio St.3d 97, 100, 671 N.E.2d 236. A clerical mistake is a mistake that is mechanical in nature and apparent on the record, which does not involve a legal decision or judgment. *Id.*

The transcript of this case is unclear as to whether Ruhlin actually stipulated to pay the $3,204. The following excerpts from the transcript are relevant to this issue.

"MR. MAZGAJ [Ruhlin/St. Paul's counsel]: Your Honor, we are in the agreement to be paid directly from Ruhlin if it wasn't paid the assignment. That's clearly work performed for which it was not paid.

"As to the 3200, Your Honor, again, based on kind of a quasi agreement we have had, I'm not real sure how to proceed on that. I don't know what to say.

"* * *

"MR. MAZGAJ: I am going to handle that 3204 this way. We are going to pay it into the court, however the court wants to do it. I guess I don't know what is going to happen between the two of them [Allied and United/Uneco] as to that amount, but—

"THE COURT: We are all of the same agreement that that $3200 was never paid by Ruhlin to United from United back to Allied was never paid.

"MR. OPALINSKI [Allied's counsel]: That's partly correct, Your Honor. I appreciate Mr. Mazgaj's gratuity in terms of willing to pay that. As we'll establish through Mr. Soroka [United/Uneco's president], Ruhlin did pay United that 3204. They just never paid it to us. So with all due respect, I'll take your 3204, and I think you have paid it. It hasn't been paid by United and Uneco.

"MR. MAZGAJ: Given my late entry, I need to talk to Mr. Stith [Ruhlin/St. Paul's other counsel] about that."

As concerning United/Uneco's motion for a directed verdict on Allied's claim for the $3,204, the following dialogue took place between United/Uneco and the court:

"MR. SONTICH, JR. [United/Uneco's counsel]: Your Honor, with respect to item number one. There is a statement here on the record that with respect to the identical amount of 3204, certainly for the purposes of this motion, there has been an offer on behalf of St. Paul to satisfy that. At this point, okay, that is something we'll note for the record now, and we'll also note that in that context, okay, clearly they are entitled to one satisfaction of the claim, one satisfaction. They're not entitled to a duplicate satisfaction, just for the one claim.

"THE COURT: Can't go after one and go after St. Paul also.

"MR. SONTICH, JR.: With that, often the next recourse would be a resolution among St. Paul and United/Uneco.

"THE COURT: Are you disputing at all that there is an unpaid contract balance in the amount of 3200 due and owing to Allied?

"MR. SONTICH, JR.: Based on the record, you know, certainly, we are not saying as a matter of law there isn't.

"THE COURT: There isn't.

"MR. SONTICH, JR.: We are saying, as a matter of law, that you cannot say that there is no basis for recovery of 3204.

"What I'm adding at this point in the motion is to say there has been an offer of payment on behalf of the bonding company which will satisfy that claim.

"THE COURT: Correct.

"MR. SONTICH, JR.: Therefore, while to this point they have had the choice of perhaps seeking more than one party to satisfy the claim, they don't have a choice of getting multiple satisfactions of the same claim.

"THE COURT: We have to figure out if this was paid, who paid it, and how come Allied didn't get it."

The court subsequently granted United/Uneco's motion for a directed verdict as to Allied's claim for the $3,204.

As evidenced by the preceding excerpts, a definite stipulation was never agreed upon and entered into whereby Ruhlin/St. Paul would pay the $3,204 to Allied. Based on the court's comment that it had to figure out whether the money "was paid, who paid it, and how come Allied didn't get it," no stipulation existed at that time that Ruhlin/St. Paul would pay the $3,204. It cannot be said that the court omitted a $3,204 award to Allied based on a clerical error. Given the confusion among the parties concerning the $3,204, it is not apparent on the record that the court "mistakenly" left this award out of its judgment entry.

Accordingly, Allied's final assignment of error is without merit.

For the foregoing reasons, the judgment of the trial court is hereby affirmed in part and reversed in part on the limited basis of the directed verdict in favor of Ruhlin on Allied's extra–work claim. This cause is remanded to the trial court for further proceedings according to law and consistent with this court's opinion. Upon remand, the trial court shall conduct proceedings between Allied and Ruhlin on Allied's unjust enrichment claim.

*Judgment accordingly.*

WAITE and DeGENARO, JJ., concur.