OPINION
{¶ 1} Plaintiff-appellant, Corna/Kokosing Construction Company, appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendant-appellee, South-Western City School District Board of Education ("the board"), on plaintiff's claim for breach of contract. Plaintiff assigns a single error:
 {¶ 2} "The trial court erred in granting summary judgment to the defendant on the basis that the contract required plaintiff to seek pre-bid approval to use an un-named manufacturer of curtain wall materials."
 {¶ 3} Because the trial court did not err in granting the board's summary judgment motion on plaintiff's breach of contract claim, we affirm.
 {¶ 4} Plaintiff's action for breach of contract arises out of a construction project where the board, acting for the South-Western City School District, accepted bids for the construction of the South-Western New Career Academy in Grove City ("the project"). The project manual prepared for the project included instructions to the bidders, as well as contract specifications, conditions, and requirements. The specifications for the building's glazed aluminum curtain wall system, which forms the building's exterior glass window wall, specified that one of four named curtain wall manufacturers be used. (Section 08920, Part 2.1.A.)
 {¶ 5} Plaintiff is a general contractor who bid on the general trades contract for the project. Prior to submitting any bids, plaintiff invited the Blakley Corporation ("Blakley") to bid as a subcontractor on furnishing and installing the curtain wall system for the project. Blakley requested the project manual prior to bidding the job. Blakley did not seek pre-bid approval to use a manufacturer other than those listed in the contract specifications, and its bid did not specify which curtain wall manufacturer it intended to use. In formulating its curtain wall bid, however, Blakley used a price quotation from United States Aluminum, who was not one of the curtain wall manufacturers specified in the contract and whose price quotation was considerably lower than that of the manufacturers named in the specifications. Blakely later explained it had "assumed" United States Aluminum was or would be approved for the curtain walls because it was a specified manufacturer for another component of the project. Blakley submitted the lowest bid for the work and, after plaintiff was deemed the lowest responsible bidder on the general trades contract, entered into a subcontract with plaintiff to furnish and install the curtain wall system.
 {¶ 6} On being advised that Blakley intended to use the United States Aluminum curtain wall system rather than one of the manufacturers named in the contract specifications, Michael Dingeldein, the principal architect on the project for the project's architectural firm, expressed concern that Blakely had not sought pre-bid approval to use United States Aluminum's system. He also questioned whether the United States Aluminum system met the contract specifications.
 {¶ 7} The architect met with Blakley and United States Aluminum on November 8, 2000, to determine if the United States Aluminum curtain wall system could meet the specifications for the project. Although Blakley and the manufacturer presented some drawings and information regarding the United States Aluminum product, the architect was unconvinced the proposed curtain wall system complied with the project's specifications. The architect nevertheless afforded Blakley an opportunity to present any additional materials on or before November 13, 2000, to show United States Aluminum's ability to meet the product specifications. Blakley failed to submit the additional information by November 13, 2000, as requested, but did fax some information on November 15, 2000, the day the school district, the architect, and the construction manager had a scheduled meeting to discuss the project. Despite its tardiness of submission, the architect reviewed the additional information Blakley submitted but remained unconvinced the proposed product complied with the contract specifications for the following reasons: (1) the proposed system would not have been fabricated and assembled at the manufacturer, as the specifications required, (2) the windows of the proposed system were of a lower rating or grade than the specifications, and (3) evidence did not show that the proposed system would be "thermally broken." The board accordingly rejected Blakley's use of the United States Aluminum curtain wall system on the project.
 {¶ 8} Plaintiff subsequently filed the instant action on behalf of Blakley, alleging the board breached its contract with plaintiff, and accordingly with Blakley as its subcontractor, by wrongfully refusing to accept the United States Aluminum curtain wall system. The board moved for summary judgment contending (1) plaintiff failed to seek pre-bid approval of the United States Aluminum system as required by Sections 1.05
and 1.08 of the project manual's Instructions to Bidders, (2) plaintiff failed to carry its contractually imposed burden of convincing the architect that the United States Aluminum system met the curtain wall specifications, and (3) plaintiff should not be rewarded for using the quotation of an unspecified and unapproved manufacturer on the project where other bidders followed the rules and used the more expensive manufacturers listed in the specifications.
 {¶ 9} The parties agreed a valid and enforceable contract existed, and the trial court determined it was memorialized in the project manual. Finding the contract and its terms to be clear and unambiguous, the trial court further found plaintiff failed to comply with the explicit provisions concerning pre-bid approval and substitution, as outlined in Sections 1.05 and 1.08 of the agreement's "Instructions to Bidders." Specifically, the trial court concluded that, although the contract required it, plaintiff did not seek pre-bid approval to substitute United States Aluminum as the curtain wall manufacturer in place of one of the four designated curtain wall manufacturers listed in the contract's product specifications. Concluding plaintiff had not substantially performed or tendered performance under the contract, the trial court ruled that plaintiff could not maintain an action for breach of contract against the board. The trial court accordingly granted summary judgment in favor of the board without addressing the remaining reasons the board advanced in support of summary judgment.
 {¶ 10} Plaintiff appeals, asserting the trial court erred in construing the contract to require Blakley to seek pre-bid approval to use a curtain wall manufacturer not listed in the contract specifications. Plaintiff contends the trial court failed to give effect to other provisions in the contract that provide for post-bid approval of proposed substitutions.
 {¶ 11} Appellate review of summary judgments is de novo, under which the appellate court stands in the shoes of the trial court and conducts an independent review of the record. Advanced Analytics Laboratories, Inc. v. Kegler, Brown, Hill Ritter, L.P.A.,148 Ohio App.3d 440, 2002-Ohio-3328, at ¶ 33. As a result, this court must affirm the trial court's judgment if any valid grounds are found on appeal to support it, even if the trial court failed to consider those grounds. Shaw v. Thomas (Nov. 2, 2000), Franklin App. No. 99AP-1291, citing Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38,41-42.
 {¶ 12} Summary judgment is appropriately granted only where the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183. The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Civ.R. 56(E); Dresher, supra; Vahila v. Hall (1997), 77 Ohio St.3d 421, 430.
 {¶ 13} To prove a breach of contract claim, a plaintiff must show (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damage or loss to the plaintiff. EFA Assoc., Inc. v. Dept. of Adm. Serv., Franklin App. No. 01AP-1001, 2002-Ohio-2421, at ¶ 22, citing Allied Erecting Dismantling Co. v. Uneco Realty Co. (2001), 146 Ohio App.3d 136, 142. In proving performance, a plaintiff must show it has substantially performed or tendered performance of the conditions on its part to be performed under the contract. Hutchinson v. S.M.C. Aluminum Foundry, Inc. (Feb. 19, 1993), Wood App. No. 91WD121, citing Thomas v. Matthews (1916),94 Ohio St. 32, syllabus; see, also, Casto Property Mgt., Inc. v. Venetta (Feb. 14, 1985), Franklin App. No. 83AP-799. "When the facts presented are undisputed, whether they constitute a performance or a breach of a written contract, is a question of law for the court." Luntz v. Stern (1939), 135 Ohio St. 225, paragraph five of the syllabus; see, also, Wengerd v. Martin (May 6, 1998), Wayne App. No. 97CA0046.
 {¶ 14} The construction of a written contract is a matter of law for the court. EFA Assoc., supra, at ¶ 30, citing Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241; McConnell v. Hunt Sports Ent. (1999), 132 Ohio App.3d 657, 675. "When the terms of the contract are unambiguous and clear on their face, the court does not need to go beyond the plain language of the contract to determine the rights and obligations of the parties and the court must give effect to the contract's express terms." EFA Assoc., supra, at ¶ 40, citing DiGioia Bros. Excavating, Inc. v. Cleveland Dept. of Pub. Util., Div. of Water (1999), 135 Ohio App.3d 436, 446.
 {¶ 15} Plaintiff contends the specifications in Section 08920 for the curtain wall system are "basis of design" specifications for which "comparable products" are permitted to be used if they comply with submittal procedures, which plaintiff argues are less restrictive than "substitution" procedures.
 {¶ 16} In the contract at issue, Section 01600 of the contract specifications, entitled "Product Requirements," sets forth selection procedures for products used on the project. The procedures direct that "[w]here Specification paragraphs or subparagraphs titled `Basis-of-Design Product[s]' are included and also introduce or refer to a list of manufacturers' names, [the contractor or subcontractor is to] provide either the specified product or a comparable product by one of the other named manufacturers." (Section 01600, Part 2.1.B.8.) By contrast, the procedures also provide that "[w]here Specification paragraphs or subparagraphs titled `Manufacturer' or `Source' name single manufacturers or sources, [the contractor or subcontractor is to] provide a product by the manufacturer or from the source named that complies with requirements." (Section 01600, Part 2.1.B.2.)
 {¶ 17} Part 2 of Section 08920, which contains the product specifications for the project's curtain walls, has a paragraph titled "Manufacturers" directing that the contractor and/or subcontractor, "[s]ubject to compliance with requirements," provide products of one of four expressly named manufacturers: (1) Moduline's 88N Curtainwall System, designated as the basis of design, (2) Kawneer, (3) Wausau, and (4) EFCO. Section 08920, Part 2.1.A. The paragraph is accompanied by a "Note" that states that Moduline is the basis of design and that similar systems by the other named manufacturers "shall be considered acceptable provided all aspects of the specifications and drawings are met or exceeded." (See Section 08920, Part 2.1 Note, and Dingeldein Affidavit ¶ 6.)
 {¶ 18} Because the product selection specification paragraph for the curtain wall system is entitled "Manufacturers," not "Basis of Design," the specification is a manufacturers' specification, not a basis of design specification. (Section 01600, Part 2.1.B.2.) The fact that the Moduline system is identified within the manufacturers' specification paragraph as the basis of design for comparable products of the other three manufacturers named within the paragraph does not render the specification a "basis of design" specification. As a result, the use of comparable products and the accompanying submittal process arguably are not available to Blakley.
 {¶ 19} Even if the "comparable product" procedures are available to Blakley, plaintiff's contention that the curtain wall system manufactured by United States Aluminum is a "comparable product" is unavailing. A "comparable product" is one that has been "demonstrated and approved" to meet or exceed the product specifications. (Section 01600, Part 1.3.A.3.) Plaintiff, through Blakley, was afforded opportunities to demonstrate its proposed manufacturer's system could comply with the product specifications. The architect articulated reasons, based upon the information Blakley submitted, why the proposed system did not comply with the specifications, and the proposed manufacturer was accordingly not approved. Therefore, the United States Aluminum curtain wall system was not "demonstrated and approved" to be a comparable product. Resolution of the question before us turns upon construction of the contract provisions regarding approval of product substitutions.
 {¶ 20} The "Instructions to Bidders" section of the contract directs bidders to submit bids in accordance with the instructions. Because the relevant portions of those instructions are at the core of plaintiff's appeal, we set them forth in their entirety. Sections 1.05 and 1.08 of the "Instructions to Bidders," which the trial court relied on to require that Blakley seek pre-bid approval to use United States Aluminum as the manufacturer for the curtain wall system, provide as follows:
 {¶ 21} "1.05 Approval Before Bidding
 {¶ 22} ".1 If a Contractor preparing bids for submission on the Work is in doubt as to the acceptability of a manufacturer's material or equipment, under the requirements as set forth in the Specifications, he should require that representatives of the proposed manufacturer or supplier contact the Architect and request a ruling on the acceptability of the material or equipment in question. The contact should be made in sufficient time, 10 days before the date scheduled for the closing of bids, so that an addendum can be issued to clarify the situation.
 {¶ 23} ".2 It is not possible to set the time allowance for every problem; however, it shall be not less than 10 days before bid closing. Each party requesting a ruling under this Article shall be responsible for the proper evaluation of the time involved and shall submit his request in ample time to process it.
 {¶ 24} ".3 Prior to receipt of bids the Architect will consider proposals for substitution of materials, equipment, and methods only when such proposals are submitted in writing at least 10 days before date set for receipt of bids, and are accompanied by full and complete technical data and other information required by the Architect to evaluate the proposed substitution.
 {¶ 25} ".4 Each bidder understands that past acceptance of products does not assure acceptance on this Project. Products not specifically specified require requests for approval prior to bid due date." (Instructions to Bidders, Part 1.05.)
 {¶ 26} "1.08 Substitutions
 {¶ 27} "1. Certain brands of material or apparatus are specified. Each bid will be based on these brands. The use of another brand may be requested as provided herein.
 {¶ 28} "2. No Substitution will be considered prior to receipt of bids unless written request for approval has been received by the Architect at least ten (10) days prior to the date for receipt of bids. * * * The burden of proof of the merit of the proposed Substitution is upon the proposer. The Architect's decision of approval or disapproval of a proposed Substitution shall be final.
 {¶ 29} "If the brand or product is acceptable, the Architect will approve it prior to bidding in an Addendum issued to all Bidders on record.
 {¶ 30} "3. In proposing a Substitution, the Bidder represents and warrants that each proposed substitution will not result in any changes to the Project, including changes to the Work of other contractors, or any decrease in the performance of any equipment or systems to be installed in the Project and agrees to pay any additional costs incurred by the Owner as a result of a substitution which is accepted.
 {¶ 31} "4. Following the award of the Contract, there shall be no substitutions, except pursuant to a Change Order. The Owner in its sole discretion may decline to consider a substitution for a Change Order." (Emphasis added.) (Instructions to Bidders, Part 1.08.)
 {¶ 32} In addition to the foregoing provisions, a paragraph in the "Products Requirement" section entitled "Products Substitutions" provides that "[r]equests for substitution received after bidding may be considered or rejected at discretion of Architect." (Section 01600, Part 2.2.A.)
 {¶ 33} We agree with the trial court that the terms of the contract are clear and unambiguous. The contract plainly requires that one of four specifically named curtain wall manufacturers be used on the project. Of the four named manufacturers, Moduline's 88N Curtainwall System is designated as the "basis of design." The contract provides that the similar systems of the other three named manufacturers are considered to be acceptable provided all aspects of the specifications and drawings are met or exceeded.
 {¶ 34} Notwithstanding the foregoing contract requirements, Sections 1.05 and 1.08 of the contract's "Instructions to Bidders" provide that a contractor can seek pre-bid approval to substitute a product brand not specified in the contract for one that is specified. According to those provisions, the contractor has the burden to demonstrate that the proposed substitution complies with the contract requirements, and the architect's decision approving or disapproving the proposed substitution is final.
 {¶ 35} Because Blakley, or plaintiff on its behalf, did not seek pre-bid approval to use United States Aluminum as the manufacturer for the curtain wall system, plaintiff did not comply with the contract's pre-bid substitution procedures. Nonetheless, the contract additionally provides that a contractor's request for substitution may be made after bidding or after the award of the contract, but that such requests may be considered or rejected at the discretion of the architect or owner. See Instructions to Bidders, Part 1.08.4, and Section 01600, Part 2.2.A.
 {¶ 36} Where parties to a construction contract expressly agree to abide by the decision of an architect, courts have upheld the architect's decision as lawful and binding unless there is clear and convincing evidence of bad faith, fraud, or a failure to exercise an honest judgment. Fred R. Jones Co. v. Fath (1920), 101 Ohio St. 47; Geis Constr. Co. v. Bd. of Edn. (1955), 71 Ohio Law Abs. 539. "[I]n all cases, a `good faith determination' requires at least to some extent that the determination be informed." Worth v. Huntington Bancshares, Inc. (1989), 43 Ohio St.3d 192, 197. Here, the reasons articulated for the rejection of the proposed manufacturer were based upon information Blakley submitted to the architect. The record contains no evidence, let alone clear and convincing evidence, that the architect or the board engaged in bad faith, fraud, or dishonesty in rejecting Blakley's request to use United States Aluminum as the curtain wall manufacturer.
 {¶ 37} A party's acceptance of a written contract indicates the party's assent to its terms. Geis, supra. Blakley was a party to the subject contract through its subcontract with plaintiff. Having accepted and agreed to the contract, plaintiff and Blakley were bound by its terms, including the provisions that unequivocally permit the architect or owner of the project, in its discretion, to reject a contractor's request for substitution. Plaintiff and Blakley, as the contractors requesting a substitution, bore the risk of such rejection. See Security Sewage Equip. Co v. McFerren (1968), 14 Ohio St.2d 251, 255 (holding that construction contractor who contracted to render a performance for which government approval was required, bore the risk that such approval would be refused); see, also, Reiter Dairy, Inc. v. Ohio Dept. of Health, Franklin App. No. 01AP-944, 2002-Ohio-2402, at ¶ 31-37, appeal not allowed, 96 Ohio St.3d 1515 (determining the state did not abuse its discretion in rejecting a bid where the bid was based on an unapproved name-brand product that did not meet contract specifications).
 {¶ 38} Because the board rightfully rejected Blakley's proposed manufacturer, plaintiff, on behalf of Blakley, did not tender performance in accordance with the express conditions of the contract. Accordingly, plaintiff was unable to maintain its action for breach of contract. Plaintiff's single assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
DESHLER KLATT, JJ., concur.