In re Marlon W. EVANS, Debtor.

Marlon W. Evans, Plaintiff,

v.

Green Tree Servicing, LLC, et al., Defendants.

Bankruptcy No. 06–31171.
Adversary No. 06–3239.

United States Bankruptcy Court, S.D. Ohio, Western Division at Dayton.

June 4, 2007.

Marlon W. Evans, Camden, OH, pro se, Debtor/Plaintiff.

Daryl R. Douple, Esq., Dayton, OH, for the Debtor/Plaintiff.

David J. Demers, Esq., New Albany, OH, for the Defendant, Green Tree Servicing, LLC.

James P. Hickey, Esq., Dayton, OH, for Guaranty Bank SSB dba GB Home Equity.

## DECISION ON ORDERS (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 28); (2) GRANTING DEFENDANT GUARANTY BANK'S MOTION FOR SUMMARY JUDGMENT (DOC. 25) AND (3) DENYING GREEN TREE SERVICING LLC'S MOTION FOR SUMMARY JUDGMENT (DOC. 29)

THOMAS F. WALDRON, Bankruptcy Judge.

### Introduction

This adversary proceeding concerns a dispute between two creditors, Green Tree Servicing, LLC ("Green Tree") and Guaranty Bank SSB dba Home Equity ("Guaranty Bank"), concerning which creditor has the priority secured position in connection with a manufactured home and Marlon W. Evans, the Debtor ("Evans" or the "Plaintiff"), who seeks to determine Green Tree a wholly unsecured creditor. The issue presented is whether Green Tree's fixture filing on a manufactured home, affixed to a parcel of real estate, remained, during the relevant time period, a properly perfected security interest. The court determines Green Tree's security interest expired during the relevant time period and, under applicable Ohio law, Guaranty Bank has the priority secured position. Further, under applicable bankruptcy law, Green Tree is a wholly unsecured creditor.

### Procedural Background

On February 1, 2007, the court entered an order establishing deadlines for filing motions for summary judgment (*Order: Establishing Dates for Filing Motions for Summary Judgment and Ordering Other Matters*—Doc. 21). The parties filed stipulations (Doc 23) and joint exhibits (Doc. 24).

Marlon W. Evans, the Debtor/Plaintiff filed *Plaintiff's Motion for Summary Judgment* (Doc. 28). Guaranty Bank filed *Defendant Guaranty Bank, SSB dba Home Equity's Motion for Summary Judgment* (Doc. 25). *Green Tree Servicing* filed a response to the summary judgment motions of Evans and Guaranty Bank (Doc. 32). Evans filed a reply brief (Doc. 34).

Green Tree also filed a motion for summary judgment (*Green Tree Servicing LLC's Motion for Summary Judgment* (Doc. 29)). Guaranty Bank filed a response (Doc. 33) and Evans also filed a response (Doc. 31).

## *Jurisdiction*

This court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

## *Summary Judgment Standard*

This court reviewed the summary judgment standard in a recently reported decision:

> The familiar standard to address the parties' filings is contained in Federal Rule of Civil Procedure 56(c) and is applicable to bankruptcy adversary proceedings by incorporation in Bankruptcy Rule 7056. Federal Rule of Civil Procedure 56(c) states, in part, that a court must grant summary judgment to the moving party if:
>
> > the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In order to prevail, the moving party, if bearing the burden of persuasion at trial, must establish all elements of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986). If the burden is on the non-moving party at trial, the movant must: 1) submit affirmative evidence that negates an essential element of the nonmoving party's claim; or 2) demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.* at 331–332, 106

S.Ct. at 2557. Thereafter, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–251, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 586–588, 106 S.Ct. at 1356–57.

*Gemini Servs., Inc. v. Mortgage Elec. Registration Sys., Inc (In re Gemini Servs., Inc.)*, 350 B.R. 74, 80–81 (Bankr.S.D.Ohio 2006), *quoting, Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.)*, 313 B.R. 732, 735 (Bankr.S.D.Ohio 2004).

## *Facts*

Evans is the owner of real property at 1455 Camden–College Corner Road, Camden, Ohio, which is located in Preble County (the "Real Property") (Stipulations, ¶ 1) and was acquired by Evans in a quit-claim deed recorded on April 23, 1997 (Stipulations, ¶ 2). Evans purchased a 1998 Four Seasons Manufactured Home (the "Manufactured Home") (Stipulations, ¶ 3) in January 1998 from D & J Mobile Homes and signed a retail installment contract and security agreement[1] (Stipulations, ¶ 4, Joint Exhibit I). The contract and security agreement were assigned to Green Tree, who was listed as a lienholder on the Ohio certificate of title (Stipulations, ¶ 4, 5; Joint Exhibit II). On October 12, 1998,

---

**1.** Paragraph 3 stated **"SECURITY INTEREST:** I give you a security interest under the applicable certificate of title law or Uniform Commercial Code in the Manufactured Home and any property added or attached to it, to secure my obligation under this contract.... I agree to execute any application for certificate of title or ownership, financing statement or other document necessary to perfect your security interest in the Manufactured Home...."

Green Tree filed a financing statement in the Preble County Recorder's Office. No continuation statement has ever been filed by Green Tree (Stipulations, ¶ 13).

Prior to the date of the filing of the financing statement (October 12, 1998), the Manufactured Home was delivered to the Real Property and "was permanently affixed to and became a part of the Plaintiff's real estate ... on a poured concrete foundation and connection to electric service, a septic tank and an underground cistern." (Stipulations, ¶ 7). Evans used the Manufactured home as his residence (Stipulations, ¶ 9). The certificate of title was never surrendered to the Clerk of the Preble County Court of Common Pleas or any other state official (Stipulations, ¶ 10).

The Plaintiff executed a promissory note in favor of Guaranty Bank on December 14, 2000 (Stipulations, ¶ 22). Guaranty Bank secured its loan with a mortgage recorded on January 22, 2001 in Preble County (Stipulations, ¶ 15).

*Analysis*

A manufactured home, which would often be considered an item of personal property, changes its character when it is affixed to real property. Initially, Ohio law treats a manufactured home as a vehicle and any lien is noted on the certificate of title. Ohio Revised Code §§ 4501.01(B) (a manufactured home is included within the general definition of a vehicle), 4505.01 (a manufactured home is defined as a motor vehicle under the Ohio certificate of title law) and 4505.13(B) (a lien on a vehicle must be noted on the certificate of title). See also Ohio Revised Code § 4501.01(MM) (a manufactured home is defined by Ohio Revised Code § 3781.06(C)(4)).[2] Once, however, a manufactured home is affixed to real property, Ohio law treats it as a fixture—part of the real estate—and in order to perfect a security interest in a fixture, a financing statement must be filed with the State of Ohio. See Ohio Revised Code § 1309.32, as effective prior to July 1, 2001.[3] Green Tree did

2. For simplicity, the court cites the current versions of these particular statutes. There is no dispute that the Manufactured Home, prior to becoming a fixture, was considered a motor vehicle under Ohio law.

3. (A) In this section and in the provisions of sections 1309.38 to 1309.43 of the Revised Code referring to fixture filing, unless the context otherwise requires:

(1) Goods are "fixtures" when they become so related to particular real estate that an interest in them arises under real estate law.

(2) A "fixture filing" is the filing in the office where a mortgage on the real estate would be filed or recorded of a financing statement covering goods that are or are to become fixtures and conforming to the requirements of division (D) of section 1309.39 of the Revised Code.

\* \* \* \* \*

(B) A security interest under sections 1309.01 to 1309.50 of the Revised Code may be created in goods which are fixtures or may continue in goods which become fixtures, but no

security interest exists under sections 1309.01 to 1309.50 of the Revised Code in ordinary building materials incorporated into an improvement on land.

(C) Sections 1309.01 to 1309.50 of the Revised Code do not prevent creation of an encumbrance upon fixtures pursuant to real estate law.

(D)(1) A perfected security interest in fixtures has priority over the conflicting interest of encumbrancer or owner of the real estate where:

(a) The security interest is a purchase money security interest, the interest of the encumbrancer or owner arises before the goods become fixtures, the security interest is perfected by a fixture filing before the goods become fixtures or within ten days thereafter, and the debtor has an interest of record in the real estate or is in possession of the real estate; or

(b) The security interest is perfected by a fixture filing before the interest of the encumbrancer or owner is of record, the security interest has priority over any conflicting interest of a predecessor in title of the

file a financing statement on October 12, 1998;[4] however, significantly for this decision, Green Tree has never filed a continuation statement, which is fatal to Green Tree's position.

If the law currently in effect was in effect in 1998, Green Tree may have had a stronger position. Under the law currently in effect—Ohio's enactment of revised Article 9 of the Uniform Commercial Code, effective July 1, 2001—a manufactured home financing statement is generally valid for thirty years. See Ohio Revised Code § 1309.515(B).

■ The law currently in effect specifically addresses financing statements filed prior to July 1, 2001, by stating, in unambiguous language, that the prior law concerning continuation statements applies to such financing statements. Ohio Revised Code § 1309.705(D).[5] Prior to July 1, 2001, the default rule of requiring a continuation statement every five years applied to manufactured homes. Ohio Revised Code § 1309.40(B)(1) (as in effect prior to July 1, 2001).[6] As an alternative to filing a continuation statement, Green Tree could have filed an initial financing statement for the Manufactured Home under the law in effect after July 1, 2001. See Ohio Revised Code § 1309.706.[7] It is undisputed

encumbrancer or owner, and the debtor has an interest of record in the real estate or is in possession of the real estate; or (c) The conflicting interest is a lien on the real estate obtained by legal or equitable proceedings after the security interest was perfected by any method permitted by sections 1309.01 to 1309.50 of the Revised Code.
(2) Whether or not the property is a fixture, a security interest in readily removable factory or office machines or readily removable replacements of domestic appliances that are consumer goods, which security interest has been perfected by any method permitted by sections 1309.01 to 1309.50 of the Revised Code and has been perfected before the property was installed in the real estate, has priority over the conflicting interest of an encumbrancer or owner of the real estate.

4. The parties dispute whether the Plaintiff's signature on this filing was completed by Green Tree pursuant to a valid power of attorney. However, since the court ultimately finds the financing statement lapsed on or about October 12, 2003, the court need not address the validity of the power of attorney to reach its determination.

5. Ohio Revised Code 1309.705(D) states that "[t]he filing of a continuation statement after July 1, 2001, does not continue the effectiveness of a financing statement filed before that date. However, upon the timely filing of a continuation statement after July 1, 2001, and

in accordance with the law of the jurisdiction governing perfection as provided in sections 1309.301 to 1309.342 of the Revised Code, the effectiveness of a financing statement filed in the same office in that jurisdiction before July 1, 2001, continues for the period provided by the law of that jurisdiction."

6. Ohio Revised Code § 1309.40(B)(1) stated, in part, that "[e]xcept as provided in divisions (B)(2) and (F) of this section, filed financing statement is effective for a period of five years from the date of filing. The effectiveness of the financing statement lapses on the expiration of the five-year period unless a continuation statement is filed prior to the lapse...." The exceptions of Ohio Revised Code § 1309.40(B)(2) and (F) did not apply to the facts of this adversary proceeding.

7. Ohio Revised Code § 1309.706 states:
(A) The filing of an initial financing statement in the office specified in section 1309.501 of the Revised Code continues the effectiveness of a financing statement filed before July 1, 2001, if:
(1) The filing of an initial financing statement in that office would be effective to perfect a security interest under this chapter.
(2) The financing statement filed before July 1, 2001, was filed in an office in another state or another office in this state; and
(3) The initial financing statement satisfies division (C) of this section.
(B) The filing of an initial financing statement under division (A) of this section continues

that Green Tree never completed either filing. Since Green Tree's financing statement expired on or about October 12, 2003, its secured position did not remain perfected and Guaranty Bank is entitled to the first and best secured priority position on the Manufactured Home, a fixture on the Real Property.[8]

■ Green Tree argues that its lien position cannot be invalidated because Evans never surrendered the certificate of title to the Preble County Clerk. As noted in *Cluxton v. Fifth Third Bank*, 327 B.R. 612, 615 (6th Cir. BAP 2005), *citing, Snyder v. Hawkins*, 2004 WL 48882 (Ohio Ct.App. Jan.9, 2004), "Ohio courts have held that a failure to precisely follow the statute by a county auditor does not negate the mobile home becoming part of the real property by operation of law."

■ Further, whatever significance the surrender of the certificate of title to the Preble County Clerk may have under Ohio law for tax purposes, an otherwise lapsed fixture filing does not remain valid because an owner failed to surrender a certificate of title on a manufactured home after affixing it to his land. The court notes that a recent unreported decision from Judge Perlman held that surrender of the certificate of title is not a necessary prerequisite to a valid fixture being created in a mobile home. *In re Hull*, Case No. 06–12431 (Bankr.S.D.Ohio March 5, 2007) (unreported decision; but available at the court's website). The court does not rely on this unreported decision; but, nevertheless, agrees with its conclusion.

Green Tree also argues that Guaranty Bank had notice of Green Tree's interest from the certificate of title, the 1998 financing statement and a credit report of

---

the effectiveness of the financing statement filed before July 1, 2001:

(1) If the initial financing statement is filed before July 1, 2001, for the period provided in section 1309.40 of the Revised Code, as it existed prior to July 1, 2001, with respect to a financing statement; and

(2) If the initial financing statement is filed after July 1, 2001, for the period provided in section 1309.515 of the Revised Code, as it exists on July 1, 2001, with respect to an initial financing statement.

(C) To be effective for purposes of division (A) of this section, an initial financing statement shall:

(1) Satisfy the requirements of sections 1309.501 to 1309.527 of the Revised Code, as they exist on July 1, 2001, for an initial financing statement;

(2) Identify the financing statement filed before July 1, 2001, by indicating the office in which the financing statement was filed and providing the dates of filing and file numbers, if any, of the financing statement and of the most recent continuation statement filed with respect to the financing statement; and

(3) Indicate that the financing statement filed before July 1, 2001, remains effective.

**8.** This analysis is consistent with Ohio Attorney General Opinion No.1996–036, which

suggests in establishing a properly perfected lien on a manufactured home, a creditor should note the lien on the certificate of title and file a fixture filing when the property becomes affixed to real property. Although these opinions are not binding on the Ohio courts, the analysis given is consistent with the plain language of the relevant statutes. In addition, Opinion 1996–036 cites to *Hoagland v. Beabout (In re Beabout)*, 110 B.R. 883 (Bankr.S.D.Ill.1990), in which the bankruptcy court held that, interpreting Illinois's similar version of Article 9, a creditor, in order to have lien priority over a mortgage, must file a fixture filing after a mobile home ceased to be personal property and became a fixture. The court notes the Sixth Circuit's decision in *Boyd v. Chase Manhattan Mtge. Corp. (In re Kroskie)*, 315 F.3d 644 (6th Cir.2003) is not helpful in this analysis, since it was a narrow decision holding that the Michigan's Mobile Home Commission Act was the exclusive method to perfect a security interest. This statute has no analogous statute in Ohio. Even more importantly, *Boyd* was effectively overruled by a later Sixth Circuit panel because the Michigan legislature clarified that *Boyd* was decided incorrectly. See *Meoli v. Citicorp Trust Bank (In re Oswalt)*, 444 F.3d 524 (6th Cir.2006).

Green Tree's lien and the purpose of perfection is to provide third parties with notice. This argument presupposes that such notice would obviate Green Tree's obligations under Ohio's enacted version of the Uniform Commercial Code to maintain a properly perfected fixture filing by substituting a different and uncodified form of notice. The court cannot give credence to this legal assumption because it has no basis in the language of the relevant statutes. Green Tree cites no relevant case law or other authority for such a proposition.

Further, Green Tree also provides no basis to conclude that Guaranty Bank's mortgage would not extend to the Manufactured Home once it was affixed to the Real Property. Under Ohio common law, the Manufactured Home, affixed to the real property prior to the Guaranty Bank's mortgage in 2001 (Stipulations, ¶ 7 and ¶ 15), is a fixture. It is part of the Real Property and Guaranty Bank's lien extends to not only the land, but the Manufactured Home affixed to it.

■ Green Tree also argues the Debtor lacked the requisite intent to create a fixture under the Supreme Court of Ohio's landmark fixture precedent, *Teaff v. Hewitt*, 1 Ohio St. 511 (1853). *Teaff* established a simple three part test:

The true criterion of a fixture, is the united application of the following requisites, to wit: 1st. Actual annexation to the realty, or something appurtenant thereto.2d. Application to the use, or purpose, to which that part of the realty with which it is connected, is appropriated.3d. The intention of the party making the annexation, to make a permanent accession to the freehold.

■ The undisputed evidence, however, demonstrates that the Manufactured Home was (1) affixed to the Real Property, (2) to be used as a home on the Real Property and (3) the Debtor intended this to be a permanent home on the Real Property.[9] See also *In re Jarvis*, 310 B.R. 330, 335–36 (Bankr.N.D.Ohio 2004) ("With respect to the issue of intent, Ohio law looks not simply at the intent to affix a chattel to a parcel of reality, but beyond, asking whether the affixor, in fact, intended to 'devote the chattel to the use and service of the land or structure already a part of the land, in such manner to enhance the serviceability of the whole as a permanent unit of property to whatever use it may be devoted.' "; citation omitted)

■ Finally, Green Tree argues Paragraph 8 of the contract between Green Tree and Evans (Joint Exhibit I) provided that the Manufactured Home would not be attached to real estate without Green Tree's consent. Without again detailing the controlling effect of applicable Ohio law governing filings and priorities, the Evans' deposition, the only other relevant evidence in the record as to this issue, establishes that D & J Mobile Homes, the assignor of the contract to Green Tree, was more than aware of Evans' intention and consequently waived any protection of such a contractual provision.[10] As an as-

---

**9.** Green Tree argues that the Debtor always intended Green Tree to have a security interest in the Manufactured Home. This decision does not dispute that security interest *per se,* but instead finds that Guaranty's mortgage is superior to the lien of Green Tree, which, ultimately, is a wholly unsecured lien. The issue is not one of the existence of a security interest; rather, it is a question of the priority of security agreements, in the context of the chapter 13 case. Once the Manufactured Home became a fixture, Guaranty Bank's mortgage included the Manufactured Home because it is affixed to the Real Property as a fixture.

**10.** In the deposition of the Plaintiff by Green Tree Counsel (Doc. 30, p. 20–21), the following questions and answers were given:

signee of the contract, that waiver is enforceable against Green Tree. See *Allied Erecting & Dismantling Co. v. Uneco Realty Co.*, 146 Ohio App.3d 136, 144, 765 N.E.2d 420 (2001), *citing, Inter Ins. Exchange of the Chicago Motor Club v. Wagstaff*, 144 Ohio St. 457, 59 N.E.2d 373 (1945) ("An assignee stands in the shoes of the assignor with respect to the assignor's rights and remedies against the obligor.")

Having determined that Guaranty Bank's lien has priority over any lien of Green Tree, the only remaining issue is whether there is any equity to which Green Tree's lien can attach. The Sixth Circuit has held that a debtor, in a chapter 13, can modify the rights of a lien on a debtor's principal residence, if that lien cannot attach to any equity in the residence. *Lane v. Western Interstate Bancorp (In re Lane)*, 280 F.3d 663 (6th Cir. 2002).

The parties agree, at the time of filing, Evans was indebted to Guaranty Bank in the amount of $121,098.69 (Stipulations, ¶ 14). In addition, Preble County was owed, as of the date of filing, $8,607.29 in taxes and assessments (Stipulations, ¶ 18). The Plaintiff has a filed appraisal of $115,000 for the Real Property (Stipulations, ¶ 20). There is no evidence contradictory to this appraisal.[11]

Q. *Who did the setup for the home, who delivered it and—*
A. *D & J*
Q. What is the home placed on? Is it on these I-beams, cross-footers?
A. It's on the outside wall and then there's—on all the cross-footers, there's poured pads and it's on that anchored with lag bolts into the foundation.
Q. *Did you get the dimensions of the home from D & J prior to building the footers—I mean prior to building the foundation?*
A. *They gave me a blueprint for the foundation.* (emphasis added).

Accordingly, Green Tree's lien has no equity to which it can attach. Pursuant to the holding in *Lane*, the lien of Green Tree is avoided as wholly unsecured.[12]

### Conclusion

Green Tree's *Motion for Summary Judgment* (Doc. 29) is **DENIED.** The summary judgment motions of Guaranty Bank (Doc. 25) and the Plaintiff, Marlon W. Evans (Doc. 28), are **GRANTED.** Separate orders will be simultaneously entered.

11. At the pretrial telephone conference on January 31, 2007, the parties agreed with the court that the cross-motions for summary judgment would obviate any need for an evidentiary hearing.

12. Counsel for the Plaintiff may submit a separate order for the release of Green Tree's lien consistent with the form of the May 2, 2007 default order against another Defendant, MGIC Credit Assurance Corporation (See Doc. 35) that provides for release of the lien upon the Debtor's chapter 13 discharge.