MARY EILEEN KILBANE, P.J.:
{¶ 1} Defendant-appellant, Demetrius Keith ("Keith"), appeals his convictions and sentence. For the reasons set forth below, we affirm.
{¶ 2} In August 2015, Keith was charged in a 14-count indictment in connection with the February 12, 2014 drive-by shooting of a vehicle occupied by Arturio Young ("Young"), Young's girlfriend Dyshenia Cranshaw ("Cranshaw"), and Joseph Willis ("Willis") on I-480, and the shooting death of Young on August 7, 2014. Keith and Young were members of rival gangs-the J Park and the ATM Jack Boys.
*139 {¶ 3} Count 1 charged Keith with the aggravated murder of Young. Count 2 charged him with the murder of Young. Counts 3, 4, and 11 charged him with the felonious assault of Young. Count 5 charged him with the attempted murder of Brandon Wiley ("Wiley"). Count 6 charged him with the felonious assault of Wiley. Counts 7 and 14 charged him with the discharge of a firearm on or near a prohibited premises. Count 8 charged him with the attempted murder of Young. Count 9 charged him with the attempted murder of Cranshaw. Count 10 charged him with the attempted murder of Willis. Count 12 charged him with the felonious assault of Cranshaw. Count 13 charged him with the felonious assault of Willis.[1] The matter proceeded to a jury trial, at which the following evidence was adduced.
{¶ 4} Several witnesses testified at trial, including Daryl Jones ("Jones") and Jones's cousin Malcolm Edwards ("Edwards"), who were also charged in connection with Young's murder. Jones testified that on the night of February 12, 2014, he was visiting his Edwards and friends Keith and Ramel Lee "Sharky" in the area of East 138th Street and Harvard Avenue. They drove to a nearby gas station. Young was pumping gas when Lee approached him. Cranshaw, who was seated in the front passenger seat of Young's car, testified that Young dropped the gas pump onto the ground, jumped into his car, and sped away as fast as he could to get away from Lee. Young's friend, Willis, was a passenger in the backseat of Young's car.
{¶ 5} Meanwhile, Lee ordered Jones to hurry back into the car and follow Young's car. Jones, who was afraid of Lee, complied and a chase ensued. Edwards was in the front passenger seat, Lee was in the rear driver's side seat, and Keith was in the rear passenger's side seat. Jones followed Young's car onto I-480 where a chase ensued for approximately ten minutes. Jones drove alongside Young's car, and Keith and Lee both fired shots at Young's car from the back window. Jones drove away following the gunshots. No one in Young's car was injured. Police investigated the incident, but nothing materialized because of the lack of witness cooperation.
{¶ 6} Edwards testified that he was under indictment for the same drive-by shooting, but was hoping for a plea deal in exchange for his testimony. He testified that he, Keith, and Lee were affiliated with people from his neighborhood, who call themselves J Park. Jones was not affiliated with J Park. He was visiting from a different neighborhood. Edwards further testified that Lee wanted to "get at" Young because of "[a] beef [they] had in the neighborhood." Edwards testified that Young was associated with the ATM Jack Boys.
{¶ 7} Several months later, in August 2014, Young was shot and killed at the corner of East 138th Street and Lambert. Young was hanging out with his friend Wiley and his brother Ryhad Muhammad ("Muhammad") before going to celebrate Cranshaw's birthday. Wiley testified that he, Young, and Muhammad were walking to a corner store at approximately 11:00 p.m. when three men rode past them on their bikes from the opposite direction. The three men then turned around and approached them from behind. Wiley, who admitted being a member of the ATM Jack Boys, immediately recognized Keith from high school and as a member of J Park. Keith and another individual, whom *140 Wiley did not recognize, pointed guns at Wiley and Young, who raised their hands. They were standing approximately eight feet from each other. Keith stated to Young, "I'm about to body you." The other individual with the gun stated "that's dead, that's dead." Wiley took this to mean that he was going to shoot or kill Young. Then, Keith and the other individual fired shots at Young and fled the scene. Wiley observed sparks coming from Keith's gun. Wiley and Muhammad ran away, uninjured. Wiley fired shots back at the shooters with his own gun, which was a .380 firearm.
{¶ 8} Young, who was shot in the chest, managed to walk to Cranshaw's house and entered through the front door calling for her. Cranshaw is the mother of Young's two children. Cranshaw's stepmother observed him entering the house, followed by Muhammad, who cried that Young was shot. Young then walked out of the house toward his car where Cranshaw and her stepmother found him gasping for air. Young passed away before Cleveland EMS could get him to the hospital.
{¶ 9} Police questioned Wiley at the murder scene, but Wiley did not identify Keith as the assailant. He also did not tell the police that he fired his own .380 firearm at the scene. When the police later questioned Wiley about the incident, he identified Keith from a single photograph by his nickname "Hot Dog." Wiley also admitted that he shot his own gun at the scene.
{¶ 10} Detective Colin Ginley ("Detective Ginley") of the Cleveland Police Gang Unit testified regarding his investigation of J Park, the ATM Jack Boys, and this case. Detective Ginley identified photos of several members of J Park based on a combination of factors, including police reports and databases, interviews of J Park members and members of the neighborhood, social media, and surveillance. He further identified gang graffiti and signs, including the J Park handsign. Detective Ginley described each gang's territory and explained that there was an ongoing "beef" between J Park and the ATM Jack Boys. According to Detective Ginley, a "beef" refers to a "disagreement on a serious level." He explained that a "beef" between gangs usually refers to some form of violence. Detective Ginley created an organizational chart that he used to identify J Park as a gang and identified Keith as a member of J Park.
{¶ 11} At the conclusion of trial, the jury found Keith guilty of the aggravated murder (Count 1), murder (Count 2), attempted murder (Count 8), and felonious assault (Counts 3, 4, and 11) of Young, the attempted murder and felonious assault of Wiley (Counts 5 and 6), discharging of a firearm on or near a prohibited premises (Counts 7 and 14), the felonious assault of Cranshaw (Count 12), and the felonious assault of Willis (Count 13). The jury also found Keith guilty of all accompanying specifications, including one-, three-, and five-year firearm specifications and criminal gang specifications. The jury found him not guilty of the attempted murder of Cranshaw and Willis (Counts 9 and 10).
{¶ 12} The parties stipulated and the court found that Counts 1-4 (the aggravated murder, murder, and felonious assault of Young) are allied offenses of similar import. The state elected to proceed with sentencing on Count 1. The parties further stipulated and the court found that Counts 5 and 6 (attempted murder and felonious assault of Wiley) are allied offenses. The state elected to proceed with sentencing on Count 5. The parties further stipulated that Counts 8 and 11 (the attempted murder and felonious assault of Young) are allied offenses. The state elected to proceed with sentencing on Count 8.
*141 {¶ 13} The trial court sentenced Keith to twenty-five years to life in prison on Count 1, eight years in prison on Count 5, eight years in prison on Count 7, six years in prison on each of Counts 8, 12, and 13, and twelve years in prison on Count 14. The court sentenced Keith to an aggregate thirteen-year sentence on the specifications to be served prior to the sentences on the underlying felonies. Keith now appeals, raising the following three assignments of error for review.
Assignment of Error One
The trial court violated [Keith's] constitutional right to confrontation by allowing [Detective Ginley's] inadmissible Crawford testimony.
Assignment of Error Two
The state did not produce sufficient evidence to prove the elements of aggravated murder.
Assignment of Error Three
The verdicts were against the manifest weight of the evidence.
Right of Confrontation
{¶ 14} In the first assignment of error, Keith argues the trial court violated his constitutional right to confront his accusers when it allowed Detective Ginley to provide testimonial hearsay. Keith contends that Detective Ginley's testimony regarding Keith's role in J Park as well as the organizational chart of J Park that Detective Ginley created were based on inadmissible testimonial hearsay.
{¶ 15} The state argues that because Keith did not specifically raise the Confrontation Clause in his objections to Detective Ginley's organizational chart, he waives all but plain error. Although defense counsel did not specifically cite the Confrontation Clause in his objections to Detective Ginley's testimony, a review of the record reveals that defense counsel did in fact object to certain portions of Detective Ginley's testimony. Therefore, we do not find that Keith has waived all but plain error, and we now review whether Detective Ginley's testimony and organizational chart violated the Confrontation Clause.
{¶ 16} The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The United States Supreme Court has interpreted the clause to bar admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant has had a prior opportunity for cross-examination. Crawford v. Washington , 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
{¶ 17} In Davis v. Washington , 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the court explained, "[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." Id. "When an out-of-court statement is not offered to prove the truth of the matter asserted, * * * the Confrontation Clause is not implicated." United States v. Sexton , 119 Fed.Appx. 735, 743 (6th Cir.2005), citing Tennessee v. Street , 471 U.S. 409, 413, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985). Moreover, the introduction of opinion testimony does not violate the Confrontation Clause when the experts rely on their independent judgment-even when this independent judgment is in some part based on inadmissible evidence. United States v. Johnson , 587 F.3d 625, 634-635 (4th Cir.2009).
*142 {¶ 18} The Crawford court set forth the following "various formulations" of the "core class" of testimonial statements:
[E]x parte in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, * * *; extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, * * *; [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.
Id. at 51-52, 124 S.Ct. 1354.
{¶ 19} In the instant case, Detective Ginley testified that he gathered intelligence regarding J Park from multiple interviews of citizens and arrested members. He also used social media to identify individuals and observe common gang signs, symbols, territory, and paraphernalia. The organizational chart was not admitted into evidence. Detective Ginley did not use it for the purpose of establishing each member's particular rank or role in the organization, but rather to establish that these individuals acted together on many occasions. Detective Ginley often referred to photographs taken from social media to explain the individuals in the chart, including Keith. Detective Ginley testified that gang members never flash gang signs or wear gang clothing in public where they could be observed by police. Detective Ginley further testified that he could identify members with "major roles" in the gang because
[t]hey were the ones who continually surfaced in our law enforcement databases, our RMS reporting system, committing crimes together, being together, as well as individuals that we had heard about the most and we had the most contact with.
{¶ 20} Under these circumstances, Detective Ginley's knowledge of the organizational chart and gang-member identification was not based on testimonial hearsay and was admissible because it is based on Detective Ginley's personal knowledge or observation of data collected in police databases.
{¶ 21} Detective Ginley also identified several J Park members by name, and testified that Keith was a "shooter," which meant that Keith was willing to do a shooting. Defense counsel objected to this testimony and the court sustained the objection. Before sustaining the objection, the court inquired of the witness as to the basis of his knowledge. Specifically, the court asked Detective Ginley the following:
Generally, you have learned what you've just testified to by either talking to some of these people themselves, or-and they admit, hey, I'm in a gang and I shoot, or talking to many people and learning things-learning a little bit from each person about somebody else, is that right?
[Detective Ginley]: Correct. That and as well as talking to other members of the gang.
* * *
THE COURT: Here's the problem, members of the jury, with the testimony [Keith] is known as a shooter. All testimony from any witness has to be based on personal knowledge.
It appears to me, Mr. Ginley, that you don't-You've never seen Mr. Keith shoot a person, have you?
THE WITNESS: No.
THE COURT: I think we're going to sustain that one, and you're asked to *143 disregard the testimony describing him as a known shooter.
{¶ 22} Based on the foregoing exchange, we find that the trial court properly sustained the objection because Detective Ginley offered testimony that was not based on his personal knowledge. The court properly ordered the jury to disregard that testimony.
{¶ 23} We also note that 12 of the counts Keith was charged with included gang specifications, which required the state to prove Keith "committed a felony that is an offense of violence while participating in a criminal gang." R.C. 2941.142. As a result, evidence that Keith was a member of the J Park gang was relevant to prove the elements of the above specification. State v. Peterson , 10th Dist. Franklin No. 07AP-303, 2008-Ohio-2838, 2008 WL 2390781, ¶ 37. In the instant case, the trial court advised the jury to
keep in mind that every charge here except Counts 7 and 14 includes a criminal gang activity specification where the prosecutor alleges that the crime in each count was an offense of violence committed while participating in a criminal gang as defined by the Ohio Revised Code. This testimony is being allowed for that purpose.
{¶ 24} The evidence was also relevant to show the relationship between Keith and Young and to put the crimes in context.
[T]he Ohio Supreme Court has held that evidence of a defendant's gang affiliation is admissible * * * where "the interrelationship between people is a central issue." [ United States v. Jobson , 102 F.3d 214, 219 (6th Cir.1996) ], quoting United States v. Gibbs , 182 F.3d 408, 430 (6th Cir.1999).
State v. Webster , 8th Dist. Cuyahoga No. 102833, 2016-Ohio-2624, 2016 WL 1593052, ¶ 49.
{¶ 25} We also note that other evidence besides Detective Ginley's testimony established Keith's membership in J Park. Wiley testified that when he observed Keith approaching himself and Young prior to the shooting, his first instinct was to run because Keith was a member of J Park and there was a "beef" between the ATM Jack Boys and J Park.
{¶ 26} Therefore, the first assignment of error is overruled.
Sufficiency of the Evidence-Aggravated Murder
{¶ 27} In the second assignment of error, Keith argues that the state failed to present sufficient evidence to establish the elements of aggravated murder under R.C. 2903.01(A), which provides that: "[n]o person shall purposely, and with prior calculation and design, cause the death of another [.]" Specifically, Keith contends there was no evidence of prior calculation and design.
{¶ 28} The Ohio Supreme Court in State v. Diar , 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 113, explained the standard for sufficiency of the evidence as follows:
Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing such a challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
*144 {¶ 29} We are mindful that, in considering the sufficiency of evidence, a certain perspective is required. State v. Eley , 56 Ohio St.2d 169, 172, 383 N.E.2d 132 (1978). "This court's examination of the record at trial is limited to a determination of whether there was evidence presented, 'which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.' " Id. , quoting Atkins v. State , 115 Ohio St. 542, 546, 155 N.E. 189 (1926). "It is the minds of the jurors, rather than a reviewing court, that must be convinced." State v. Thomas , 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982).
{¶ 30} In State v. Walker , 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124 ¶ 18-20, the Ohio Supreme Court recently reviewed the prior calculation and design element of aggravated murder and found that
[t]he phrase "prior calculation and design" by its own terms suggests advance reasoning to formulate the purpose to kill. Evidence of an act committed on the spur of the moment or after momentary consideration is not evidence of a premeditated decision or a studied consideration of the method and the means to cause a death. The General Assembly has determined that it is a greater offense to premeditate or to plan ahead to purposely kill someone. All prior-calculation-and-design offenses will necessarily include purposeful homicides; not all purposeful homicides have an element of prior calculation and design.
Since the enactment of R.C. 2903.01 in 1974, we have repeatedly emphasized that there is no "bright-line test that emphatically distinguishes between the presence or absence of 'prior calculation and design.' Instead, each case turns on the particular facts and evidence presented at trial." State v. Taylor, 78 Ohio St.3d 15, 20, 1997-Ohio-243, 676 N.E.2d 82 (1997) ; State v. Braden , 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, ¶ 61 ; State v. Maxwell , 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 148.
We traditionally consider three factors in determining whether a defendant acted with prior calculation and design: "(1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or 'an almost instantaneous eruption of events?' " State v. Taylor , 78 Ohio St.3d 15, 19, 1997-Ohio-243, 676 N.E.2d 82 (1997), quoting State v. Jenkins , 48 Ohio App.2d 99, 102, 355 N.E.2d 825 (8th Dist.1976).
{¶ 31} In Walker , the Ohio Supreme Court determined that there was insufficient evidence of prior calculation and design where the defendant murdered the victim in a bar following an argument. The defendant did not know the victim, and the killing resulted from a spontaneous eruption of events. Id. at ¶ 27.
{¶ 32} Here, Wiley testified that Young had problems with J Park in the past and that there was "a beef" between the two gangs. There was also evidence that Keith had previously attempted to murder Young in a drive-by shooting on I-480. On the night that Young was murdered, Keith and his friends rode their bikes past Young, turned around, and approached Young from behind with their weapons drawn. Before shooting Young, Keith warned, "I'm about to body you." Unlike in Walker , in the instant case, the strained relationship, previous attempt to murder Young, and Keith's actions on the night Young was murdered all indicate a calculated decision to kill Young. There was evidence of animosity between Keith and Young that triggered the killing. Therefore, *145 when viewing the evidence in a light most favorable to the state, we find sufficient evidence to support an aggravated murder conviction.
{¶ 33} Accordingly, the second assignment of error is overruled.
Manifest Weight of the Evidence
{¶ 34} In the third assignment of error, Keith argues the verdicts were against the manifest weight of the evidence because of Wiley's self-serving testimony and the lack of physical evidence connecting Keith to both incidents.
{¶ 35} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. State v. Bowden , 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, 2009 WL 2186608, ¶ 13, citing Thompkins , 78 Ohio St.3d at 390, 678 N.E.2d 541. The Ohio Supreme Court in State v. Wilson , 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, has stated:
[T]he reviewing court asks whose evidence is more persuasive-the state's or the defendant's? * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." [ Thompkins at 387, 678 N.E.2d 541 ], citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.
{¶ 36} Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that " 'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " Thompkins at 387, 678 N.E.2d 541, quoting State v. Martin , 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for " 'the exceptional case in which the evidence weighs heavily against the conviction.' " Id. , quoting Martin .
{¶ 37} We note that when considering a manifest weight challenge, the trier of fact is in the best position to take into account inconsistencies, along with the witnesses's manner, demeanor, gestures, and voice inflections, in determining whether the proffered testimony is credible. State v. Kurtz , 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, 2013 WL 3582078, ¶ 26 ; see also State v. Lilliard , 8th Dist. Cuyahoga Nos. 99382, 99383, and 99385, 2013-Ohio-4906, 2013 WL 5970247, ¶ 93 (In considering the credibility of witnesses on a manifest weight challenge, an appellate court is "guided by the presumption" that the jury, or the trial court in a bench trial, is " 'best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " Lilliard , quoting Seasons Coal Co. v. Cleveland , 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984) ). Therefore, we afford great deference to the factfinder's determination of witness credibility. State v. Ball , 8th Dist. Cuyahoga No. 99990, 2014-Ohio-1060, 2014 WL 1340226, ¶ 36.
{¶ 38} The record in the instant case demonstrates that Wiley knew Keith prior to the shooting. Wiley testified that he was approximately eight feet away from Keith when he shot Young. Wiley observed sparks fly from Keith's gun when the shots were fired. Wiley also testified that Keith was wearing an *146 orange and blue shirt with horizontal stripes at the time of the shooting. Young's brother, Muhammad, also observed the shooting and testified that the person who shot Young was wearing an orange and blue shirt with horizontal stripes.
{¶ 39} Keith contends the accounts of what he was wearing at the time of the shooting are unreliable because they were based on a Facebook photograph depicting Keith wearing a shirt with orange and blue stripes. The jury, however, was free to assess the credibility of the witnesses, and defense counsel pointed out on cross-examination that Wiley originally told police that Keith was wearing a gray and black striped shirt. The jury chose to give little consequence to the discrepancy in Wiley's description of the color of the stripes of Keith's shirt. Furthermore, other witnesses corroborate Wiley's and Muhammad's testimonies. Cranshaw, her stepmother, and a neighbor heard the gunshots. The neighbor and Muhammad observed Keith and his friends approach Young and Wiley before the shots were fired. Thus, there was competent, credible evidence to establish Keith's aggravated murder, murder, attempted murder, and felonious assault convictions.
{¶ 40} Keith also argues the guilty verdicts on his attempted murder, felonious assault, and discharging of a firearm on or near a prohibited premises charges, resulting from the drive-by shooting on I-480 in February 2014, were against the manifest weight of the evidence. He contends there were no witnesses who observed Keith shooting at the vehicle.
{¶ 41} A review of the record, however, reveals that several witnesses testified that Keith fired shots from the backseat of one car into another car driven by Young. Jones, who drove Keith's car, testified that he observed both Keith and Lee firing their guns at Young from the backseat of the car. Edwards also testified that he observed Keith with a gun at the time of the shooting, and Cranshaw testified that she heard more than one gun firing at the same time. Under these circumstances, it was reasonable for the jury to believe that Keith attempted to murder and seriously injure Young and his passengers. Therefore, Keith's attempted murder, felonious assault, and discharging of a firearm on or near a prohibited premises are supported by the manifest weight of the evidence.
{¶ 42} Accordingly, the third assignment of error is overruled.
{¶ 43} Judgment is affirmed.
EILEEN T. GALLAGHER, J., and LARRY A. JONES, SR., J., CONCUR

Each of Counts 1-14 carried one- and three-year firearm specifications. Each of Counts 1-6 and 8-13 also carried a criminal gang activity specification. Counts 8-14 additionally carried a 5-year drive-by shooting specification.