[Cite as *State v. Smale*, 2018-Ohio-5218.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

**STATE OF OHIO,**

**PLAINTIFF-APPELLEE,**                    **CASE NO. 9-17-44**

**v.**

**RICHARD SMALE,**                          **O P I N I O N**

**DEFENDANT-APPELLANT.**

**Appeal from Marion County Common Pleas Court
Trial Court No. 17-CR-280**

**Conviction and Sentence Affirmed and Cause Remanded**

**Date of Decision:   December 26, 2018**

**APPEARANCES:**

   *Joel M. Spitzer* **for Appellant**

   *Kevin P. Collins* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-Appellant Richard Smale ("Appellant") appeals the judgment of the Marion County Common Pleas Court finding him guilty of Possession of Heroin, Trafficking in Heroin, and Tampering with Evidence. On appeal, Appellant asserts that: 1) the verdict was against the manifest weight of the evidence, and 2) the trial court erred by admitting untimely provided discovery. For the reasons that follow, we affirm the judgment of the Marion County Common Pleas Court.

*Factual and Procedural Background*

{¶2} On July 5, 2017, MARMET officers executed a search warrant at 141 Wallace Street in Marion, Ohio. (Doc. No. 4). In one of the bedrooms, officers located Appellant and a juvenile female (later identified as S.S.). (*Id.*). When officers entered the room, Appellant was observed in the process of sitting down on a couch next to a window that contained an air conditioner unit. (*Id.*). Ultimately, officers found three clear plastic bags containing suspected heroin outside of the residence, immediately below the window that contained the air conditioning unit. (*Id.*). A presumptive positive field test revealed that the suspected heroin weighed approximately 58.2 grams. (*Id.*). A search warrant also resulted in law enforcement seizing cash totaling $488.98. (*Id.*).

{¶3} On July 12, 2017, Appellant was indicted by the Marion County Grand Jury on the following counts: Count One, possession of heroin, in violation of R.C. 2925.11(A)(C)(6), a felony of the first degree; Count Two, trafficking in heroin, in violation of R.C. 2925.03(A)(2)(C)(6), a felony of the first degree; and Count Three, tampering with evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree. (Doc. No. 1). Appellant was arraigned on July 17, 2017, and entered pleas of "not guilty" to all counts in the indictment. (Doc. No. 7) The trial court found that Appellant was indigent and provided him with court-appointed counsel. (Doc. No. 8).

{¶4} Appellant's jury trial was scheduled for October 5, 2017. (Doc. No. 9). Pertinent to this appeal, the State, on October 4, 2017, filed its first amended bill of particulars, indicating that the weight of the heroin was more than 10 grams but less than 50 grams, making Counts One and Two second degree felonies. (Doc. No. 34). On the same day, Appellant filed a series of motions to exclude and prohibit evidence alleging that the State failed to timely provide discovery. (Doc. Nos. 31-33).

{¶5} Prior to the commencement of Appellant's jury trial on October 5, 2017, the trial court granted the State's request to amend Count One and Count Two from felonies of the first degree to felonies of the second degree. (Trial, 10/05/2017 Tr., Vol. I, at 97). After oral arguments from the State and Appellant on pending

motions, the trial court overruled all of Appellant's motions, with the exception of the motion to exclude untimely disclosed witnesses. (*Id.* at 96-112). The trial court ruled that the State should have disclosed its witnesses sooner, and as a sanction, permitted the Appellant to question those witnesses before they testified. (*Id.* at 121-23). At the conclusion of the two-day trial, Appellant was found guilty on all charges in the amended indictment. (Doc. Nos. 45, 46, 47).

{¶6} On October 30, 2017, Appellant was sentenced in the trial court. (Doc. No. 66). At sentencing, the trial court found that Counts One and Two were allied offenses of similar import and merged them for the purposes of sentencing. (*Id.*). Thereafter, the State elected for the Appellant to be sentenced on Count Two, and the trial court imposed the following sentences: Count Two, trafficking in heroin, a mandatory term of five (5) years in prison and Count Three, tampering with evidence, a term of three (3) years in prison. (*Id.*). The trial court ordered that the sentences imposed to be served consecutively, for a total prison sentence of eight (8) years.[1] (*Id.*).

{¶7} From this judgment Appellant appeals, and presents the following assignments of error for our review:

---

[1] We note that the trial court's sentencing entry reflects typographical errors, notably that Appellant was convicted of first-degree felonies in Count One and Count Two. (*See,* Doc. No. 66). However, the typographical error contained in the entry regarding the date of sentencing was corrected at the lower level by a *nunc pro tunc* entry of sentencing filed November 6, 2017. (Doc. No. 68).

## ASSIGNMENT OF ERROR NO. I

**THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.**

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ADMITTING (OVER OBJECTION) UNTIMELY SUBMISSION OF DISCOVERY.**

*Appellant's First Assignment of Error*

{¶8} In his first assignment of error, the Appellant argues that the State produced no evidence linking him to the drugs found at 141 Wallace Street. Specifically, Appellant argues that the State failed to produce evidence that he constructively possessed the drugs in question. For the reasons that follow, we find that the manifest weight of the evidence supports Appellant's convictions and overrule the first assignment of error.

*Standard of Review*

{¶9} The Ohio Supreme Court has "'carefully distinguished the terms 'sufficiency' and 'weight' in criminal cases, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.'" *State v. Lyle,* 3rd Dist. Allen No. 1-14-41, 2015-Ohio-1181, ¶ 9 *quoting Eastley v. Volkman,* 132 Ohio St.3d 328, 2010-Ohio-2179, 972 N.E.2d 517, ¶ 10.

{¶10} In analyzing a claim that a conviction was against the manifest weight of the evidence, an appellate court:

> sits as the "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. * * * The appellate court, "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction."

*State v. Johnson*, 3rd Dist. Shelby No. 17-08-06, 2008-Ohio-4784, ¶ 4 *quoting State v. Jackson*, 169 Ohio App.3d 440, 2006-Ohio-6059, 863 N.E.2d 223, ¶ 14 (citations omitted). However, in sitting as the thirteenth juror the appellate court should give due deference to the findings made by the jury. *Id.*

*Analysis*

{¶11} At the outset, we note that Appellant asserts that the "sufficiency of evidence" standard of review applies to his first assignment of error. However, Appellant failed to promulgate a sufficiency of the evidence argument, in either the heading or the body of this assignment of error. Because "weight of the evidence and sufficiency of the evidence are clearly different legal concepts," we will address Appellant's first assignment of error from a manifest weight of the evidence standpoint only. *See, State v. Thompkins,* 78 Ohio St.3d 380, 389, 1997-Ohio-52, 678 N.E.2d 541.

{¶12} In amended Count One of the indictment, Appellant was found guilty of possession of heroin, in an amount greater than 10 grams but less than 50 grams. R.C. 2925.11(A), entitled "Drug possession offenses," provides the following:

> (A)  No person shall knowingly obtain, possess, or use a controlled substance or controlled substance analog.

R.C. 2925.11(A).   Pertinent to Appellant's conviction, the Ohio Revised Code defines "knowingly," in relevant part, as:

> (B)   A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.  * * *.

R.C. 2901.22(B); *State v. Burrell,* 3rd Dist. Seneca No. 13-96-54, 1997 WL 401569, * 1.  Furthermore, the Ohio Revised Code defines "possess" as:

> (K)  Possess" * * * means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.

R.C. 2925.01(K).

{¶13} Appellant argues that his possession of drugs conviction was against the manifest weight of the evidence because no drugs were found on or near his person.  Appellant further argues that the State produced "no mail or any other linking documents or evidence" to show that 141 Wallace Street belonged to him.

{¶14} Initially, we note that *ownership* of 141 Wallace Street is not an essential element of Appellant's possession of drugs offense.  And in regards to

Appellant's argument that there is no evidence that he possessed the drugs in question, we find that the record proves otherwise.

{¶15} The State offered the testimony of S.S. to prove that the Appellant possessed large quantities of heroin weekly when she lived with him at 141 Wallace Street. (Trial, 10/06/2017 Tr., Vol. II, at 259). Furthermore, S.S. testified that she lived with Appellant at that address for three months and during that time Appellant gave her heroin and made her addicted to it. (*Id.* at 261). Lastly, S.S. testified that the heroin found on the ground (under the window containing the air conditioning unit) on July 5, 2017 during the raid was the same heroin that she observed on the couch next to Appellant the day before.[2] (*Id.* at 254-56; State's Ex. Nos. 34, 36, 42).

{¶16} With respect to heroin being a "controlled substance," the State's expert witness, Sam Fortener ("Fortener"), a forensic scientist with the Ohio Attorney General's Bureau of Criminal Investigation ("BCI"), testified that heroin is a "controlled substance," as defined in R.C. 2925.01(A) and R.C. 3719.01(C). (*Id.* at 277-78). Furthermore, Fortener testified that the total amount of heroin submitted to BCI weighed approximately 22 grams. (*Id.* at 286; State's Ex. No. 47).

---

[2] We note that the State mismarked its exhibits 35 and 36 during trial, however, at the time S.S. testified, Ex. No. 36 was properly marked and testified to as a bag with heroin. (*See,* Trial, 10/05/2017 Tr., Vol. II, at 256).

**{¶17}** Weighing the evidence in the record, we conclude that the jury did not lose its way in determining that the Appellant possessed between 10 and 50 grams of heroin on or about July 5, 2017. Evidence supporting Appellant's conviction consists of testimony and exhibits from multiple witnesses, both lay and expert, including S.S. (who specifically testified that the same bag of heroin she observed on the couch on July 4, 2017 was found outside on the ground on July 5, 2017). Because the jury was entitled to believe the State's witnesses, we conclude that their verdict with respect to Count One was not against the manifest weight of the evidence. *State v. Berry,* 3rd Dist. Hancock No. 5-16-16, 2017-Ohio-1490, ¶ 20. *See also, State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶18}** Next, we direct our attention to amended Count Two of the indictment, wherein Appellant was found guilty of trafficking in heroin, in an amount greater than 10 grams but less than 50 grams. R.C. 2925.03(A)(2), entitled "Trafficking offenses," provides the following:

> (A)  No person shall knowingly do any of the following:
>
> (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

R.C. 2925.03(A)(2).

{¶19} The Appellant contends that his conviction for trafficking in heroin was against the manifest weight of the evidence by repeating his argument that there was no evidence presented that the drugs found at the searched residence were the Appellant's or that the residence belonged to him. Because Appellant does not address any specific element of Trafficking in Heroin as indicted, we will direct our attention to the portions of the record that address his trafficking conviction.

{¶20} At trial, S.S. testified that when she lived with Appellant at 141 Wallace Street, Appellant made money by selling drugs. (Trial, 10/06/2017 Tr., Vol. II, at 251-52). S.S. testified that Appellant "got the drugs to sell" and "cut up the drugs." (*Id.* at 252). S.S. later clarified her testimony, testifying that Appellant would bring large quantities of heroin to the residence and then divide it into separate bags, so it could be sold. (*Id.* at 259-60). After the Appellant packaged the heroin, S.S. would sell the heroin. (*Id.* at 256-57). Specifically, S.S. testified that she sold "Dalton" the heroin (that she obtained from the Appellant), then gave the Appellant the money from the sale. (*Id.*). S.S. testified that this process, in a large part, was repeated with a "friend" named "Tracy." (*Id.* at 257-58). S.S. further testified that her heroin transactions would take place at and around the house (located at 141 Wallace Street) where she and Appellant were residing. (*Id.* at 258-59).

{¶21} Lastly, S.S. testified that she understood drug terms, testifying that "a half" meant a "half of a gram," (of heroin) which would normally sell for $60. (*Id.* at 260). When questioned by the State what a "30" was, S.S. testified that it was "a half (gram of heroin) of a half (gram of heroin)." (*Id.*).

{¶22} In our review of the record, we conclude that the jury received testimony from S.S. regarding Appellant's complicit trafficking conduct and that the Appellant failed to produce any evidence to the contrary.[3] We "note that when considering a manifest challenge, the trier of fact is in the best position to take into account inconsistencies, along with the witnesses'[] manner, demeanor, gestures, and voice inflections, in determining whether the proffered testimony is credible." *State v. Keith,* 8th Dist. Cuyahoga No. 104034, 2017-Ohio-1545, 90 N.E.3d 136, ¶ 37. Accordingly, we afford great deference to the factfinder's determination of witness credibility. *Id.; see also, State v. Barrie,* 10th Dist. Franklin No. 15AP-848, 2016-Ohio-5640, 70 N.E.3d 1093, ¶ 15. Weighing the evidence and the applicable law, we conclude that the jury did not lose its way in finding that Appellant trafficked heroin on or about July 5, 2017.

---

[3] We are cognizant of the fact that S.S. signed an agreement with the State that in exchange for her truthful testimony, she would have the "Serious Youthful Offender" designation dropped on her charges and she would not be tried as an adult. (*Id.* at 264-65; State's Ex. No. 58). We are also cognizant of the fact that even though S.S. testified that she understood all the terms in the State's agreement, she was unable to explain what terms such as "derivative use" and "rebuttal evidence" meant. (*Id.* at 270-71).

{¶23} Lastly, Appellant was found guilty of tampering with evidence, in violation of R.C. 2921.12(A)(1), which provides, in its relevant part:

(A)  No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1)  Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation.

R.C. 2921.12(A)(1).    The Ohio Supreme Court has held that tampering with evidence requires that the State prove the following essential elements: "(1) knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment, or removal of the potential evidence, [and] (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley,* 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11.

{¶24} At trial, Jeremy Bice ("Bice"), a state trooper assigned to the MARMET drug task force ("MARMET"), testified that he was part of the "entry team" that breached the door of 141 Wallace Street on July 5, 2017 to execute the search warrant at the property.  (Trial, 10/05/2017 Tr., Vol. I, at 140).  Bice testified that prior to breaching the door, another individual on the entry team "knocked on the door, knocked and announced several times, [and] did not get an answer."  (*Id.*).  On cross-examination, Bice testified that the entry team announced their presence

by yelling loudly while coming up the steps, in order for the occupants of 141 Wallace Street to hear their arrival. (*Id.* at 178). Stacy McCoy ("McCoy"), a Marion County Sheriff's Office's Detective assigned to MARMET and also a part of the entry team, corroborated Bice's testimony, testifying that the process of "knock and announce" was done by yelling several times to make sure that the occupants could hear the entry team's arrival. (*Id.* at 188-89).

**{¶25}** After making entry into the residence, McCoy entered a bedroom to the left of the kitchen. (*Id.*). McCoy testified that upon opening a bedroom door to the left of the kitchen, she observed Appellant "backing up from the window and sitting down on the couch that was right next to the door." (*Id.* at 189). The window that Appellant was backing up from was the only window in the room, and in the window was an air conditioning ("AC") unit. (*Id.* at 190). With regards to the window unit, McCoy testified that the AC was situated half inside and half outside the window, and on each side of the air conditioner there were accordion sides that "squeezed in[to]" the AC. (*Id.* at 207).

**{¶26}** Mark Starace ("Starace"), a Marion County Sheriff's Office's Detective assigned to MARMET, testified that after the residence was secured, he entered the bedroom where Appellant was located and searched the room. (*Id.* at 239). Starace testified that upon observing the window AC unit, he (with the assistance of Bice) moved it out of the window and located suspected drugs outside

-13-

on the ground below it. (*Id.*). Starace further testified that it was possible to move the "accordions" back into the AC unit, which would result in direct access to the outside of the home. (*Id.* at 140). With respect to where the drugs were observed on the ground below the bedroom window, Starace testified that the drugs were found directly under that window. (*Id.* at 241). Furthermore, as discussed above, S.S. testified that the heroin found on the ground on July 5, 2017 by MARMET was the same heroin that she observed on the couch next to Appellant on July 4, 2017. (Trial, 10/06/2017 Tr., Vol. II, 254-56; State's Ex. Nos. 34, 36, 42).

{¶27} Weighing the evidence and the applicable law set forth above, we conclude that the jury did not lose its way in finding that Appellant: (1) knew that law enforcement officials were about to enter his home; (2) with such knowledge, attempted to conceal or remove drugs located in the room; (3) with the purpose of impairing the potential evidence's availability. Accordingly, Appellant's conviction for tampering with evidence is not against the manifest weight of the evidence.

{¶28} For the reasons stated above, Appellant's first assignment of error is overruled.

*Appellant's Second Assignment of Error*

**{¶29}** In his second assignment of error, Appellant argues that the trial court erred by permitting the State to present evidence that was not timely disclosed. For the reasons that follow, we disagree.

*Standard of Review*

**{¶30}** "The trial court has broad discretion over evidentiary rulings, and such rulings will not be reversed on appeal absent an abuse of discretion." *State v. Workman,* 171 Ohio App.3d 89, 2007-Ohio-1360, 869 N.E.2d 713, ¶ 10. *See also, In re Sherman,* 3rd Dist. Hancock No. 05-04-47, 2005-Ohio-5888, ¶ 27. An "'abuse of discretion' constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably." *Id. quoting Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "When applying the abuse-of-discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Dindal v. Dindal,* 3rd Dist. Hancock No. 5-09-06, 2009-Ohio-3528, ¶ 6 citing *Blakemore, supra.*

*Analysis*[4]

**{¶31}** On appeal, Appellant argues that the State committed multiple discovery violations, including:[5] (1) providing defense counsel BCI lab test results two days before trial; (2) providing defense counsel with supplemental discovery listing several new witnesses the day before trial; (3) providing defense counsel a "notice of suspension from employment" (regarding the State's forensic scientist scheduled to testify) on the day of trial; and (4) providing defense counsel with a contract between S.S. and the State in exchange for S.S.'s testimony at trial in "the middle of trial." For the reasons that follow, we find that the trial court did not abuse its discretion by permitting the State to present untimely disclosed evidence at trial.

**{¶32}** We begin our analysis of the alleged discovery violations with Crim.R. 16, which provides, in its pertinent part as follows:

> **(A) Purpose, Scope and Reciprocity.** This rule is to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large. All duties and remedies are subject to a standard of due diligence, apply to the defense and the prosecution equally, and are intended to be reciprocal. Once discovery

---

[4] At the outset, we note that Appellant's heading for his second assignment of error (p. 7) is inconsistent with his assignment of error as stated, the issue presented for review as stated, and the legal argument presented. (Br. of Appellant at 7). Accordingly, we will only address the merits of his second assignment or error as argued. *See generally,* App.R. 16(A); App.R. 12(A)(1)(b); *Citibank, N.A. v. LaPierre,* 10th Dist. Franklin No. 13AP-30, 2013-Ohio-3016, ¶ 7.

[5] We address the issues raised by Appellant in chronological order, out of the order presented. (*See,* Br. of Appellant at 9).

is initiated by demand of the defendant, all parties have a continuing
duty to supplement their disclosures.

**(L) Regulation of Discovery.**
(1) The trial court may make orders regulating discovery not
inconsistent with this rule. If at any time during the course of the
proceedings it is brought to the attention of the court that a party has
failed to comply with this rule or with an order issued pursuant to this
rule, the court may order such party to permit the discovery or
inspection, grant a continuance, or prohibit the party from introducing
in evidence the material not disclosed, *or it may make such other
order as it deems just under the circumstances*.

(Emphasis sic). (Emphasis added). Crim.R. 16(A);(L)(1).

**{¶33}** "The overall objective of the criminal rules 'is to remove the element

of gamesmanship from a trial.'" *State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-

966, 986 N.E.2d 971, ¶ 19 *quoting City of Lakewood v. Papadelis,* 32 Ohio St.3d 1,

3, 511 N.E.2d 1138 (1987). "The purpose of the discovery rules 'is to prevent

surprise and the secreting of evidence favorable to one party.'" *Id. quoting*

*Lakewood,* 32 Ohio St.3d at 3, 511 N.E.2d 1138 (1987).

**{¶34}** On October 3, 2017, Appellant's trial counsel was provided with BCI

results of the contraband seized from 141 Wallace Street. (Doc. No. 92). On

October 4, 2017, Appellant filed a motion in limine to exclude the BCI report,

indicating that the late disclosure of the report unfairly prejudiced the Appellant.

(*Id.*). Prior to the start of Appellant's jury trial (on October 5th), the trial court

addressed Appellant's motion in limine. (Trial, 10/05/2017 Tr., Vol. I, at 92). The

State, in explaining the delay, represented to the trial court that it requested analysis

of the substances on July 12, 2017, one week after the incident occurred. (*Id.* at 95). Further, the State represented to the trial court that when the completed analysis report was received from BCI on October 3, 2017, it immediately delivered that report to Appellant's attorney. (*Id.* at 92).

{¶35} With respect to the information contained in the report, the BCI analysis revealed that the weight of heroin was 20 plus grams, which *lowered* Appellant's indicted charges from first-degree offenses to second-degree offenses. (*Id.* at 93). Furthermore, the BCI report revealed that mixed with the heroin was 20 plus grams of fentanyl, and Appellant was *not* indicted for possession or trafficking in fentanyl. (*Id.* at 94).

{¶36} Lastly, the State represented to the trial court that there was no motion for an independent analysis of any of the narcotics seized from 141 Wallace Street, making the argument that Appellant had been denied the ability to independently test the narcotics disingenuous. (*Id.*). Ultimately, the trial court overruled Appellant's October 4, 2017 motion in limine, finding that State had timely submitted the request for analysis to BCI and properly disclosed said results to the Appellant as soon as they were received. (*Id.* at 97). Moreover, the trial court ruled that the Appellant could have, but failed to request a continuance to secure a second, independent test. (*Id.* at 97-98).

**{¶37}** In determining whether the trial court abused its discretion by overruling Appellant's motion in limine regarding the BCI test results, the Ohio Supreme Court provided the following three factors a judge should consider:

> (1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of a defense, and (3) whether the accused was prejudiced.

*Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 35 *quoting State v. Parson,* 6 Ohio St.3d 442, 453 N.E.2d 689 (1983). Furthermore, "[a] trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (*Id.*).

**{¶38}** With those factors and principles in mind, we find that the trial court did not abuse its discretion by overruling Appellant's motion in limine and permitting the State to present the BCI results at trial. Even though presenting the Appellant with the BCI test results two days before trial was a potential discovery violation, such disclosure was not a "willful violation," under the facts presented because the State received the test results on the same date it was disclosed. Furthermore, even if foreknowledge of the undisclosed material would have been beneficial, we find no prejudice to Appellant, because the test results resulted in the reduction of Counts One and Two to lesser felonies. Additionally, the BCI test results revealed that Appellant was in possession of 20 plus grams of fentanyl, an

offense in which Appellant was not charged. As such, Appellant was not prejudiced under the facts presented. Accordingly, Appellant's first issue is without merit.

{¶39} Next, we direct our attention to Appellant's argument that the trial court committed reversible error by permitting the State to provide a supplemental discovery witness list to Appellant's counsel the day before trial. The record reveals that on May 4, 2017, the State filed its supplemental discovery, listing the following individuals as additional witnesses: S.S.; Kathy Caudill of the Marion Police Department; Major Jon Shaffer of the Marion Police Department; and Fortener from BCI. (Doc. No. 35). However, on the morning of trial, the State filed another supplemental discovery list, providing two more witnesses: Amanda Wheeler of the Marion Police Department and Major Joe McDonald of the Marion Police Department. (Doc. No. 39).

{¶40} Prior to the commencement of trial, Appellant's counsel requested the trial court exclude the testimonies of S.S., Kathy Caudill, Major Jon Shaffer, Amanda Wheeler, and Major Joe McDonald, due to the late disclosures.[6] (Trial, 10/05/2017 Tr., Vol. I, at 105-06). In support of his request, Appellant cited and provided to the trial court a copy of *State v. Decker*, wherein this Court found that "there be strong enforcement of Crim.R. 16(B)(1)(c) by the trial courts in order to effectuate the purposes of [Crim.R. 16]." *State v. Decker,* 3rd Dist. Seneca No. 13-

---

[6] Appellant did not object to the testimony of Sam Fortener, due to a previously filed demand. (Trial, 10/05/2017 Tr., Vol. I, at 105).

-20-

03-17, 2003-Ohio-4645, ¶ 21; (Trial, 10/05/2017 Tr., Vol. I, at 107). Moreover, Appellant's counsel represented to the trial court that the *Decker* decision alluded to "the prosecutor's office being held to higher standards of professionalism." (*Id.*).

**{¶41}** After taking the matter under consideration, the trial court found that "the State should have [provided] the witnesses sooner than wh[en] they did * * *." (*Id.* at 121). In crafting a sanction for the late disclosure, the trial court permitted defense counsel to question those witnesses prior to their testimony.[7] (*Id.*).

However, as to witness S.S., the trial court found that the State's late disclosure of her presented an issue different from other witnesses, due to the nature of her testimony. (*Id.* at 122). In reviewing *Decker,* the trial court found that *Decker* relied on a prior version of Crim.R. 16. (*Id.*). Furthermore, the trial court found that pursuant to a 2010 revision, Crim.R. 16 was now "an open discovery" rule, and consistent with the open discovery rule, the State had repeatedly referred to S.S. in reports that it had disclosed to Appellant's counsel. (*Id.* at 122-23). Because Appellant had notice of S.S.'s involvement in the case, the trial court found that the least sanction consistent with the proper administration of justice was to permit S.S. to testify on the condition that Appellant's counsel have the opportunity to question her prior to her becoming a witness. (*Id.* at 123).

---

[7] Only S.S. and Sam Fortener testified at Appellant's trial. (Trial, 10/06/2017 Tr., Vol. II, at 250; 273).

**{¶42}** Under the facts presented, we find that the trial court did not abuse its discretion by permitting witnesses disclosed in an untimely fashion to testify. The trial court correctly noted that *Decker* was based on Ohio Supreme Court precedent that interpreted a previous version of Crim.R. 16. *Decker,* 3rd Dist. Seneca No. 13-03-17, 2003-Ohio-4645, ¶ 21; *see also, State ex rel. Steckman v. Jackson,* 70 Ohio St.3d 420, 639 N.E.2d 83 (1994), *overruled by State ex rel. Caster v. Columbus,* 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598 (2016).

**{¶43}** Additionally, the Ohio Supreme Court, in *Darmond,* held that the balancing test announced in *Lakewood* for discovery violations committed by a defendant, "applies equally to discovery violations committed by the state and to discovery violations committed by a criminal defendant." *Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, syllabus. Specifically, *Darmond* held that "'a trial court must inquire into circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery.'" *Id. quoting Lakewood,* 32 Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987), paragraph two of the syllabus.

**{¶44}** The record reveals that the trial court inquired into the circumstances surrounding the late disclosure of the witnesses. (Trial, 10/05/2017 Tr., Vol. I, at 108-12). With respect to S.S., the State represented to the trial court that S.S. had

consistently indicated an unwillingness to testify until October 4, 2016, at which time the State immediately disclosed to Appellant's trial counsel that S.S. was going to testify. (*Id.* at 109). Furthermore, the State represented to the trial court that they were not going to compel S.S.'s testimony, because S.S. was charged in juvenile court on the July 5, 2017 incident as well. (*Id.*). Lastly, the State argued that S.S.'s testimony was not a surprise, because S.S. was mentioned in several narratives provided by law enforcement; S.S. was in the same room as Appellant at the time the search warrant was executed; and S.S. completed an interview with police at the time the search warrant was executed. (*Id.*). Even though the trial court found that the State should have formally disclosed S.S. as a witness sooner than two days before trial, the trial court also found that the appropriate and least severe sanction was to allow Appellant's trial counsel the opportunity to question S.S. prior to S.S. being permitted to testify. (*Id.*).

{¶45} Consistent with factors outlined in *Lakewood,* we find that the trial court did not abuse its discretion by permitting witnesses disclosed in an untimely fashion to testify, after providing Appellant's trial counsel with the opportunity to question the witnesses. *See generally, Lakewood,* at 5 ("factors to be considered by the trial court include the extent to which [the party] will be surprised or prejudiced by the witness' testimony, the impact of witness preclusion on the evidence at trial, and the outcome of the case, whether violation of the discovery rules was willful or

in bad faith, and the effectiveness of less severe sanctions"). Accordingly, the Appellant's second issue is without merit.

{¶46} Next, Appellant raises issue with the State providing a "notice of suspension from employment" for Fortener, the State's forensic scientist. However, in arguing the issue, Appellant's trial counsel conceded that the notice of suspension was actually favorable material that could be used to impeach Fortener. (Trial, 10/05/2017 Tr., Vol. I, at 96). The State also acknowledged that there was no issue with Fortener's testimony, because the State disclosed the witness as soon as it received the BCI report. (*Id.* at 110). At trial, Appellant cross-examined Fortener on his suspension. (Trial, 10/06/2017 Tr., Vol. II, at 289-92).

{¶47} Consistent with the factors outlined in *Lakewood*, we find that Appellant was not prejudiced by the late disclosure of Fortener's suspension, because the Appellant had the opportunity to cross-examine Fortener on his suspension at trial. The late disclosure was also not willful or in bad faith, because until October 3, 2017, the State was unaware of which forensic scientist had tested the narcotics submitted to BCI. (*See, Id.* at 110).

{¶48} Accordingly, the trial court did not abuse its discretion by permitting Fortener to testify at trial, and the late disclosure of the notice of suspension is immaterial because there was no prejudice to Appellant. The third issue is without merit.

**{¶49}** Lastly, Appellant argues that the trial court erred by allowing the State to present a contract for S.S.'s testimony in the middle of trial. The morning of the second day of Appellant's jury trial, the State presented a contract of agreement ("the agreement") between itself (the State) and S.S. (Trial, 10/06/2017 Tr., Vol. II, at 231). Because of the agreement, Appellant filed a second motion in limine to prohibit the use of other acts and misconduct evidence (of Appellant) at trial. (*Id.,* Doc. No. 43). After arguments on the matter, the trial court found Appellant's motion not well taken and overruled the same. (*Id.* at 236). During S.S.'s testimony, Appellant cross-examined S.S. on the agreement's terms and promises. (*Id.* at 269-72; State's Ex. No. 58).

**{¶50}** Again, looking at the factors discussed in *Lakewood*, we find no error with the trial court's decision to permit S.S. to testify, given the late disclosure of S.S.' agreement. The record reveals that the trial court properly imposed the least severe sanction for the late disclosure of S.S. as a witness for the State. Furthermore, the Appellant failed to demonstrate prejudice by the last minute addition of the agreement to the State's case. The record reveals that the Appellant was able to use the agreement, on cross-examination, to cast doubt on S.S.'s credibility. During trial, the following exchange occurred between Appellant's trial counsel and S.S.:

> **Q. (Questioning by Appellant's trial counsel) Ms. S\* \*\*, this was previously marked as State's Exhibit 58.**
>
> **A. (S.S.) Okay.**

Q.   Can you identify that?

A.   Yes.

Q.   Is that the agreement?

A.   Yes.

Q.   Okay.  And did you understand all of the terms that were in it?

A.   Yes.

Q.   Okay.  So you knew what "derivative use" means?"

A.   No.

Q.   Okay.  And did you know what "rebuttal evidence" means?

A.   No.

Q.   Okay.  What about "impeachment"?

A.   No.

(Trial, 10/06/2017 Tr., Vol. II, at 271).

{¶51} Based on the foregoing, Appellant has not demonstrated that the trial court abused its discretion by permitting S.S. to testify after the imposition of a discovery sanction.  Accordingly, the fourth issue raised by the Appellant is without merit and we overrule Appellant's second assignment of error.

{¶52} Nevertheless, as noted above, the trial court's sentencing entry incorrectly identifies that Appellant was convicted of first-degree felony heroin

possession and first degree felony trafficking in heroin. (*See,* Doc. No. 66). Prior to trial, the State filed its "first amended response of plaintiff State of Ohio to defendant's request for bill of particulars," wherein the State indicated that the weight of the heroin possessed and trafficked exceeded 10 grams, but was less than 50 grams, making Appellant's possession and trafficking offenses felonies of the second degree. (Doc. No. 34). After *voir dire* but prior to opening statements, the State moved the trial court to amend the indictment with respect to Count One and Count Two to reflect second degree felonies, consistent with the actual weight of the drug. (Trial, 10/05/2017 Tr., Vol. I, at 97). The trial court granted the State's request and amended Count One and Count Two. (*Id.*).

{¶53} However, in its sentencing entry filed on October 31, 2017, the trial court repeatedly wrote that Appellant was found guilty of "Possession of Heroin, [R.C. 2925.11(A)(C)(6)], *F1*" and "Trafficking in Heroin [R.C. 2925.03(A)(2)(C)(6)], *F1*." (Emphasis added). (Doc. No. 66). Even with the mistake in felony levels, the sentencing entry reflected the correct weights of the drug, and the trial court sentenced Appellant within the second-degree felony guidelines. (*Id.*). Therefore, we view the repeated *F1* designations in Appellant's sentencing entry to be merely a "clerical error," apparent on the record, and correctable via a *nunc pro tunc* entry. *See,* Crim.R. 60(A); *Allied Erecting & Dismantling Co. v. Uneco Realty Co.,* 146 Ohio App.3d 136, 146, 2001-Ohio-3387,

765 N.E.2d 420 ("[i]t is within the trial court's discretion to correct clerical mistakes that are apparent on the record, but not those mistakes that require the court to make substantive changes in its judgments.")

**{¶54}** Accordingly, we remand the cause to the trial court for correction of its sentencing entry, via a *nunc pro tunc* order, relative to the felony degrees of Counts One and Two.

### Conclusion

**{¶55}** Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we overrule Appellant's first and second assignments of error and affirm the conviction and sentence of the Marion County Common Pleas Court. However, we remand so the trial court may amend its sentencing entry via a *nunc pro tunc* order to include the appropriate felony level offense.

*Conviction and Sentence Affirmed*
*and Cause Remanded*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**